**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| KATHY DEEVERS, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>WING FINANCIAL SERVICES LLC,<br><br>        Defendant.<br><br>——————————————————<br><br>VENELIN STOICHEV, individually, and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>WING FINANCIAL SERVICES, LLC.,<br><br>        Defendant. | **Case No. 4:22-CV-00550-CVE-JFJ**<br><br><br>**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT & MEMORANDUM OF LAW IN SUPPORT** |

## TABLE OF CONTENTS

Motion to Dismiss & Introduction ................................................................................ 1

Relevant Factual Allegations ...................................................................................... 3

Argument .................................................................................................................... 5

    I.   This Court Should Dismiss Plaintiffs' Complaint under Rule 12(b)(1) because Plaintiffs' Lack Article III Standing ............................................................................................ 5

        A.    Relevant Law ............................................................................................ 5

        B.    Plaintiffs Have Failed to Plausibly Allege That They Suffered an Injury-in-Fact as a Result of the Incident ....................................................................................... 6

        C.    Plaintiffs have Failed to Allege a Harm that is Fairly Traceable to the WFS' Challenged Conduct .......................................................................................... 11

    II.   Alternatively, This Court Should Dismiss Plaintiffs' Complaint Under Rule 12(b)(6) for Failure to State a Claim ............................................................................................ 13

        A.    Standard of Review .................................................................................. 14

        B.    Plaintiffs Fail to Allege Facts Sufficient to Meet of any of the Elements of a Negligence Claim as a Matter of Law (Count I) ............................................... 15

        C.    Neither the FTC Act Nor HIPAA Provide a Duty of Care for a *Per Se* Negligence Claim as a Matter of Law (Count II) .............................................................. 18

        D.    WFS does not owe Plaintiffs a Fiduciary Duty (Count III) ........................ 21

        E.    No Implied Contract Exists Between Plaintiffs and WFS (Count V) ......... 22

        F.    Plaintiffs Fail to Allege an "Unlawful Practice" which is a Necessary Element of an Oklahoma Consumer Protection Act Claim (Count VI) ...................................... 23

        G.    Plaintiffs' Unjust Enrichment Fails Because it is Duplicative of its Other State Law Claims (Count IV) ........................................................................................... 24

        H.    All of Plaintiffs' Claims Fail Because Plaintiffs have not Suffered any Legally Cognizable Damages .......................................................................................... 25

Conclusion ................................................................................................................ 25

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*,
2021 WL 5937742 (D.N.J. Dec. 16, 2021) ...............................................................................17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..........................................................................................................14

*Bell Atlantic v. Twombly*,
550 U.S. 544 (2007) .....................................................................................................14, 17

*Big Elk v. Bd. of Cty. Comm'rs of Osage Cty.*,
3 F. App'x 802 (10th Cir. 2001) .........................................................................................5

*Blood v. Labette County Med. Ctr.*,
2022 WL 11745549 (D. Kan. Oct. 20, 2022) ................................................................6, 8, 12

*Brigance v. Velvet Dove Restaurant, Inc.*,
1986 OK 41, 725 P.2d 300..................................................................................................15

*In re Brinker Data Incident Litig.*,
2020 WL 691848, at *9 (M.D. Fla. Jan. 27, 2020) ...............................................................19

*C.C. v. Med-Data Inc.*,
2022 WL 970862 (D. Kan. Mar. 31, 2022) ...........................................................................7

*In re Capital One Consumer Data Security Breach Litig.*,
488 F. Supp. 3d 374 (E.D. Va. 2020) ...............................................................................8, 19

*Chartney v. City of Choctaw*,
441 P.3d 173 (Ok. Ct. App. 2019) .......................................................................................19

*Cherny v. Emigrant Bank*,
604 F.Supp.2d 605 (S.D.N.Y. 2009)......................................................................................9

*Clapper v. Amnesty Int'l USA*,
133 S. Ct. 1138 (2013)........................................................................................................8

*Clemens v. ExecuPharm Inc.*,
48 F.4th 146 (3d Cir. 2022) ................................................................................................11

*Cohen v. Northeast Radiology, P.C.*,
2021 WL 293123 (S.D.N.Y. Jan. 28, 2021) ..........................................................................18

ii

*In re Commercial Fin. Servs., Inc.*,
268 B.R. 579 (N.D. Okla. 2001) .........................................................24

*Conway v. Lone Star Transportation*,
LLC, 2020 WL 609750 (N.D. Okla. Feb. 7, 2020)...........................19, 20

*Cooper v. Bonobos*,
2022 WL 170622, a *5 (S.D.N.Y. Jan. 6, 2022) ....................................9

*Costa v. Allen*,
274 S.W.3d 461 (Mo.2008) ...............................................................22

*Crowe v. SRR Partners, LLC*,
2022 WL 4610096 (D. Utah Sept. 30, 2022)........................................25

*Dixon v. Bhuiyan*,
10 P.3d 888 (Okla. 2000) .............................................................22, 23

*Enslin v. The Coca-Cola Company*,
136 F. Supp. 3d 654 (E.D. Pa. 2015) .............................................11, 12

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*,
362 F.Supp.3d 1295 (N.D. Ga. 2019) .............................................17, 18

*F.D.I.C. v. Grant*,
8 F. Supp. 2d 1275 (N.D. Okla. 1998) ................................................25

*Fanean v. Rite Aid Corp. of Delaware, Inc.*,
984 A.2d 812 (Del. Super. 2009)(Delaware) ........................................20

*Fed. Trade Comm'n. v. Wyndham Worldwide Corp.*,
799 F.3d 236 (3d Cir. 2015)...............................................................19

*Fernandez v. Leidos, Inc.*,
127 F. Supp. 3d 1078 (E.D. Cal. 2015).................................................12

*Francis v. APEX USA, Inc.*,
406 F. Supp. 3d 1206, 1209 (W.D. Okla. 2019) .....................................3

*Gaines-Tabb v. ICI Explosives USA, Inc.*,
995 F. Supp. 1304 (W.D. Okla. 1996), *aff'd*, 160 F.3d 613 (10th Cir. 1998) ........................16

*Garland v. Orlans, PC*,
999 F.3d 432 (6th Cir. 2021) .............................................................10

*In re GE/CBPSData Breach Litigation*,
*2021 WL 3406374* (S.D.N.Y. 2021) ...................................................18

iii

*In re Google Android Consumer Privacy Litig.*,
2013 WL 1283236 (N.D. Cal. Mar. 26, 2013) ............................................................8

*Gordon v. Virtumundo, Inc.*,
2007 WL 1459395 (W.D. Wash. May 15, 2007), *aff'd*, 575 F.3d 1040 (9th
Cir. 2009) .............................................................................................................10

*Graves v. Johnson*,
359 P.3d 1151 (Okla. App. Div. 1 2015) ...............................................................22

*Harvell v. Goodyear Tire & Rubber Co.*,
164 P.3d 1028 (Okla. 2006) ..................................................................................24

*Henry v. Merck and Co., Inc.*,
877 F.2d 1489 (10th Cir. 1989) .......................................................................15, 16

*Horton v. Hamilton*,
345 P.3d 357 (Okla. 2015) .....................................................................................21

*Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*,
892 F.3d 613 (4th Cir. 2018) .............................................................................8, 9

*Joyce v. M & M Gas Co.*,
1983 OK 110 ....................................................................................................15, 16

*Khan v. Children's Nat'l Health Sys.*,
*188 F. Supp. 524 (D. Md. 2016)* ............................................................................8

*Kiamichi River Legacy All., Inc. v. Bernhardt*,
439 F. Supp. 3d 1258 (E.D. Okla. 2020) ...............................................................3

*Kimbriel v. ABB, Inc.*,
2019 WL 4861168 (E.D.N.C. Oct. 1, 2019) ..........................................................8

*Legg v. Leaders Life Ins. Co.*,
574 F. Supp. 3d 985 (W.D. Okla. 2021) .........................................................5, 6, 9

*Mayfield v. Presbyterian Hosp. Administration*,
772 Fed. Appx. 680 (10th Cir. 2019) ...................................................................20

*Metro. Life Ins. Co. v. Bradshaw*,
450 F. Supp. 3d 1258 (W.D. Okla. 2020) .............................................................25

*Nicholson v. Tacker*,
1973 OK 75, 512 P.2d 156 .....................................................................................15

*Parrish v. Arvest Bank*,
2016 WL 3906814 (W.D. Okla. July 14, 2016) ....................................................24

iv

*Patterson v. Beall*,
19 P.3d 839 (Okla. 2000) .........................................................................................23

*Prince v. B.F. Ascher Co., Inc.*,
90 P.3d 1020 (Okla. App. Div. 3 2004) ...................................................................15

*Queen Anne Candy Co. v. Eagle*,
1939 OK 177, 88 P.2d 630........................................................................................23

*Reilly v. Ceridian Corp.*,
664 F.3d 38 (3d Cir. 2011)....................................................................................9, 10

*Richards v. City of Lawton*,
629 P.2d 1260 (Okla. 1981) .....................................................................................25

*Ridge at Red Hawk, L.L.C. v. Schneider*,
493 F.3d 1174 (10th Cir. 2007) ...............................................................................14

*Sackin v. TransPerfect Global, Inc.*,
278 F.Supp.3d 739 (S.D.N.Y. 2017)........................................................................17

*In re Santa Fe Nat. Tobacco Co. Mktg. & Sales Practices and Products Liab.
Litig.*,
288 F. Supp. 3d 1087 (D.N.M. 2017) ......................................................................25

*In re Sci. Applications Int'l Corp.*,
45 F. Supp. 3d (D.D.C. 2014) ..................................................................................12

*Sheldon v. Kettering Health Network*,
40 N.E.3d 661 (Ohio Ct. App. 2015)(Ohio) ...........................................................20

*Sims v. Kahrs L. Offices, P.A.*,
2023 WL 2734317 (D. Kan. Mar. 31, 2023) .......................................................7, 10

*In re Sonic Corp. Customer Data Sec. Breach Litig. (Fin. Institutions)*,
2020 WL 3577341 (N.D. Ohio July 1, 2020) ..........................................................19

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)..........................................................................................5, 6, 11

*Supermart No. 7 v. N. Star Mut. Ins. Co.*,
2015 WL 737006 (W.D. Okla. Feb. 20, 2015) ........................................................23

*T.D. Williamson, Inc. v. Lincoln Electric Automation, Inc.*,
2022 WL 16842907 (N.D. Okla. Jan. 21, 2022)......................................................24

v

*Tibbetts v. Sight "*
*n [sic] Sound Appliance Centers, Inc*., 77 P.3d 1042, 1051 (Okla. 2003), *as corrected* (Sept. 30, 2003) ................................................................................................25

*In re TJX Cos. Retail Sec. Breach Litig*.,
564 F.3d 489 (1st Cir. 2009), *as amended on reh'g in part* (May 5, 2009) ..........................19

*TransUnion LLC v. Ramirez*,
141 S.Ct. 2190 (2021) ........................................................................................................5, 6

*Travis v. Assured Imaging LLC*,
2021 WL 1862446 (D. Ariz. May 10, 2021) .............................................................................9

*Tsao v. Captiva MVP Rest. Partners, LLC*,
986 F.3d 1332 (11th Cir. 2021) ...............................................................................................7

*Wallace v. Health Quest Sys., Inc*.,
2021 WL 1109727 (S.D.N.Y., Mar. 23, 2021) ......................................................................17

*Walters v. Blue Cross and Blue Shield of Texas, Inc*.,
3:21-CV-981-L, 2022 WL 902735 (N.D. Tex. Mar. 28, 2022)(Texas)....................................20

*Warth v. Seldin*,
422 U.S. 490 (1975)..................................................................................................................5

*Weaver v. Legend Senior Living*,
LLC., 2017 WL 3088416, at *4 (W.D. Okla. July 20, 2017) ..................................................25

**Statutes**

*15 O.S. (1991), § 753* ....................................................................................................................23

15 Okla. Stat. §§ 752(13) ............................................................................................................23

**Regulations**

42 C.F.R. § 160.103 ...............................................................................................................20, 21

**Rules**

Fed. R. Civ. P. 9(b) ......................................................................................................................24

Fed. R. Civ. P. 12(b)(1)..............................................................................................................1, 2

Fed. R. Civ. P. 12(b)(6)..............................................................................................................1, 2

Fed. R. Civ. P. 12(b)(6)..........................................................................................................13, 14

Rule 9(b) ......................................................................................................................................14

ClarkHill\L4403\458654\271551911.v1-5/8/23

**Other Authorities**

Restatement (Second) of Torts § 46 cmt. j ....................................................................11

**MOTION TO DISMISS & INTRODUCTION**

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Defendant Wing Financial Services LLC ("WFS" or Defendant) moves to dismiss the consolidated class action complaint (ECF No. 21) ("Complaint") of Plaintiffs Deevers and Stoichev (collectively "Plaintiffs").

Incidents involving malicious actors gaining unauthorized access to an organizations' Information Technology ("IT") systems are on the rise. In turn, so are actions – like Plaintiffs' instant Complaint – in which individuals assert a putative class action against the compromised organization that allegedly held their information. But the viability of such claims is subject to Article III of the United States Constitution's requirement that all plaintiffs have an injury-in-fact. Indeed, in many such incidents the individuals whose data was hosted on compromised system do not suffer any real harm. The core issue is whether the plaintiffs demonstrate through well-pleaded factual allegations that their information was exfiltrated in incident and then *actually misused*. Without actual misuse, any alleged harm fails to satisfy Article III because it is a self-created harm based on a speculative future injury that may never come into fruition.

That is the case here. While Plaintiffs allege that third-party malicious actors accessed their information during an intrusion into Defendant Wing Financial Services, LLC's ("WFS" or "Defendant") IT systems, they do not allege facts showing that their information was removed and then ***actually misused***. Rather, Plaintiffs vaguely allege that they were inconvenienced, lost time, experienced anxiety, and have heightened risk of potential future identity theft. Absent well-pleaded allegation of actual misuse, these vague allegations are insufficient to plausibly assert a real and imminent injury-in-fact under the strictures of Article III.

The only allegation remotely approaching potential misuse is Plaintiff Stoichev's claim that unknown criminal attempted to use his Best Buy credit card. But this claim fails because no

nexus exists between the Incident and the alleged attempted misuse of a Best Buy consumer credit card. Stoichev neither alleges that he was a customer of WFS' tax preparation services nor that he conveyed his Best Buy credit card information to WFS in connection with any services. Because Plaintiffs have not suffered an Article III injury, this Court should dismiss Plaintiffs' Complaint with prejudice under Fed. R. Civ. P. 12(b)(1).

Alternatively, Plaintiffs' Complaint fails under Fed. R. Civ. P. 12(b)(6) because every one of their state law claims fail as a matter of law. As explained further below:

- ***Negligence (Count I):*** WFS does not owe Plaintiffs a duty of care as a matter of law under Oklahoma law because there is no duty to protect against intentional criminal conduct. Moreover, Plaintiffs do not plausibly allege a breach of a duty or a foreseeable injury.

  ***Per Se Negligence (Count II):*** Neither the Federal Trade Commission Act ("FTC Act") nor the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") create a duty of care under Oklahoma law. Also, HIPAA (which only regulates healthcare entities) cannot serve as basis for a duty of care WFS (a tax preparer).

- ***Breach of Fiduciary Duty (Count IV):*** No "special relationship" exists between WFS and Plaintiffs that would create a fiduciary duty. Moreover, an obligation to provide a certain standard of cybersecurity would not fall into the scope of any plausible fiduciary duty between WFS (a tax preparer) and Plaintiffs (the customer).

- ***Breach of Implied Contract (Count V):*** Plaintiffs fail to allege facts showing words or conduct that would constitute creation contract between WFS and Plaintiffs with *defined terms* as to the standard of cybersecurity it would provide related to Plaintiffs' information.

  ***Oklahoma Consumer Protection Act (Count VI):*** Plaintiffs fail to plead facts with Rule 9(b) particularity demonstrating WFS engaged in deceptive conduct.

- ***Unjust Enrichment (Count IV):*** Plaintiffs unjust enrichment claim is duplicative of its other state law claims and fails for all of the reasons those claims fail.

## RELEVANT FACTUAL ALLEGATIONS[1]

WFS is an independent franchise tax preparation service, located in this District. Compl. ¶¶ 2; 33. Plaintiffs allege that "as a condition of providing financial services," WFS "acquired, collected and stored, and assured reasonable security over [Plaintiffs'] PII and financial information." Compl. ¶ 33. Plaintiffs do not explain, what specific information they conveyed to WFS, how or when WFS conveyed an "assurance of reasonable security," or what standard of security WFS allegedly assured it would provide. *See* Compl. ¶ 33.

On August 7, 2022, WFS experienced an incident in which unknown criminal actors ("Malicious Actors") gained unauthorized access to WFS' IT systems. Compl. ¶ 59 nt. 8.[2] On November 10, 2022, WFS determined that the information included certain Personally Identifiable Information ("PII"). *Id*. WFS immediately took action, with the assistance of security and privacy professionals, to secure its IT systems. *Id*. On December 1, 2022, WFS notified all individuals whose information was in the system at the time of the unauthorized access (the "Notice Letter"). *Id*. Among other things, WFS provided the notified individuals with 12 months of credit monitoring and identity protection services. *Id*.

### Plaintiff Venelin Stoichev

Unlike Plaintiff Deevers, Stoichev does not directly allege that he was ever a customer of WFS' tax preparation services. *Compare* Compl. ¶ 14 *with* ¶ 27. However, Stoichev alleges that

---

[1] WFS disputes the allegations in Plaintiffs' Complaint even where not expressly stated. For brevity, many of Plaintiffs allegations are written as alleged in the Complaint because this Court "accepts as true all of the factual allegations in the Complaint" when ruling on a Rule 12 motion. *Kiamichi River Legacy All., Inc. v. Bernhardt*, 439 F. Supp. 3d 1258, 1261 (E.D. Okla. 2020).

[2] Citations to ¶ 59 nt. 8 refer to WFS' December 1, 2022, correspondence to the Maine Attorney General. On a Rule 12 motion, this Court may properly consider this correspondence both because (i) it is a "document[] referenced in the complaint that [is] central to the plaintiff's claims" and (ii) it relates to "matters of which the court may take judicial notice." *See Francis v. APEX USA, Inc*., 406 F. Supp. 3d 1206, 1209 (W.D. Okla. 2019)(citation omitted).

he provided WFS his personal and financial information, and that information was "accessed" and "exposed" by the criminal actors who compromised WFS' IT systems. Compl. ¶¶ 14, 18. Stoichev received WFS' Notice Letter regarding the Incident. Compl. ¶ 23.

Stoichev alleges that he suffered the following injuries as a result of the Incident:

- Lost time "dealing with the consequences," annoyance, interference, and inconvenience (Compl. ¶¶ 20, 22);

- Diminution in the value of his PII (Compl. ¶21);

- "[F]ear and anxiety over the impact of cybercriminals accessing, using, and selling his PII" (Compl. ¶ 22);

- Spam phone calls (Compl. ¶ 24); and

- "[I]ncreased risk of fraud, identity theft, and misuse." (Compl. ¶ 25).

Additionally, Stoichev claims that on an unspecified date in December 2022 an unknown individual *attempted* to make a purchase with his Best Buy credit card. Compl. ¶ 23. However, Stoichev neither alleges that he conveyed his Best Buy credit card information to WFS, nor that there was any reason for WFS to collect his Best Buy credit card information in connection with its tax preparation services. *See* Compl. ¶ 23.

### *Plaintiff Kathy Deevers*

Deevers "previously received tax preparation services from [WFS] and is one of its customers." Compl. ¶ 27. Deevers does not indicate what information she conveyed to WFS in the scope of receiving WFS' tax preparation services. *See* Compl. ¶ 27. Deevers alleges that she received WFS' Notice Letter notifying her of the Incident. Compl. ¶ 28. Deevers alleges that she suffered the following injuries as a result of the Incident:

- Time and expenses related to monitoring her accounts and credit reports for fraudulent activity (Compl. ¶ 29);

- Increased and imminent threat of fraud and identity theft (Compl. ¶ 29);

- "[F]ear and anxiety" due to the "increased risk" of identity theft (Compl. ¶ 29); and

- "[L]ost value" of her personal information (Compl. ¶ 29).

Deevers does not allege any evidence of actual misuse of her data, nor any concrete harms such as identity theft as a result of the Incident.

## **ARGUMENT**

### I.   **THIS COURT SHOULD DISMISS PLAINTIFFS' COMPLAINT UNDER RULE 12(b)(1) BECAUSE PLAINTIFFS LACK ARTICLE III STANDING**

#### A.   **Relevant Law**

To establish Article III standing, each plaintiff must show that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

"As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing the three elements for standing." *Legg v. Leaders Life Ins. Co*., 574 F. Supp. 3d 985, 989 (W.D. Okla. 2021) (citing *Spokeo*, 578 U.S. at 338). "[E]ven at the pleading stage, the plaintiff must clearly . . . allege facts demonstrating each element." *Id*. (quoting *Spokeo*, 578 U.S. at 338, 136 S.Ct. 1540 (internal quotations omitted)). "Further, in a putative class action, the named representative must personally allege that he has standing to sue." *Id.* (citing *Warth v. Seldin*, 422 U.S. 490, 502 (1975); *Big Elk v. Bd. of Cty. Comm'rs of Osage Cty*., 3 F. App'x 802, 807 (10th Cir. 2001)). "And standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2208 (2021).

ClarkHill\L4403\458654\271551911.v1-5/8/23

**B.** **Plaintiffs Have Failed to Plausibly Allege That They Suffered an Injury-in-Fact as a Result of the Incident**

The first element of Article III standing – an injury-in-fact – "requires a plaintiff to show that he suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Legg v. Leaders Life Ins. Co*., 574 F. Supp. 3d 985, 989) (*quoting Spokeo*, 578 U.S. at 338 (*quoting Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992))). "A "concrete" injury may include tangible or intangible harms, so long as they 'actually exist' and are 'real and not abstract.'" *Id.* at 988-89 (quoting *Spokeo*, 578 U.S. at 338 (internal quotations omitted). "A real, existing injury is a prerequisite to federal jurisdiction because 'federal courts do not adjudicate hypothetical or abstract disputes' nor do they "exercise general legal oversight . . . of private entities.'" *Id*. at 989 (quoting *TransUnion*, 141 S. Ct. at 2190)). For the reasons set forth below, each injury alleged by Plaintiffs fails to meet the "injury-in-fact" requirement of Article III standing.

### 1. Increased Risk of Future Identity Theft

Plaintiffs both claim that they are at an "increased risk of fraud, identity theft, and misuse" in the future as a result of malicious actors gaining access to their information in WFS' system. Compl. ¶¶ 25, 29. However, Plaintiffs do not allege that the malicious actors exfiltrated, removed, and actually misused their information. *See Legg*, 574 F. Supp. 3d at 989. Without any concrete allegations of misuse of their information, Plaintiffs' alleged increased risk of harm does not satisfy Article III's injury-in-fact requirement.

"The Tenth Circuit has not yet addressed" whether concrete allegations of misuse are necessary to establish Article III standing. *Blood v. Labette County Med. Ctr*., 2022 WL 11745549, at *7 (D. Kan. Oct. 20, 2022). However, three courts in the Tenth Circuit have held that actual misuse is necessary to demonstrate Article III standing. *See id*.; *Legg*, 574 F. Supp. 3d at 990

6

(without "allegations of misuse . . . circuit courts have generally declined to find standing"); *C.C. v. Med-Data Inc.*, 2022 WL 970862 (D. Kan. Mar. 31, 2022). *See also Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1340 (11th Cir. 2021) (standing based on "increased risk of theft or misuse" requires "***at least some allegations of actual misuse***"). Thus, the "Tenth Circuit . . . would follow the line of cases where [Article III standing] depends on whether plaintiffs have alleged misuse of their data." *C.C.,* 2022 WL 970862.

The only allegation even approaching actual misuse is Stoichev's claim that a criminal actor attempted to use this Best Buy credit card in December 2022. Compl. ¶ 23. Unlike co-Plaintiff Deevers, Stoichev does not directly allege receiving WFS' tax preparation services. *Compare* Compl. ¶ 14 *with* ¶ 27. Even if he was a WFS customer, Stoichev neither alleges facts showing that he provided his Best Buy credit card information to WFS nor that WFS collects merchant credit card information in preparing tax returns).[3] Most importantly, however, Stoichev does not allege actual misuse of that consumer credit card through unauthorized charges or bank fees (only that someone *attempted* to use the card).[4] Stoichev's bald allegations of one attempted charge on his Best Buy credit card do not constitute actual misuse.

Accordingly, Plaintiffs' allegations of increased risk of fraud or identity theft are insufficient to covey Article III standing.

### 2. Diminution of the Value of PII

Both Plaintiffs allege harm in the form of diminution of the value of their PII. Compl. ¶¶ 21, 29. Courts have held that an alleged diminution in the value of PII is not a concrete injury

---

[3] As explained below in Subsection I(C), *infra*, the alleged attempted use of Stoichev's Best Buy credit card also fails because the alleged harm is not "fairly traceable" to WFS' alleged wrongful conduct (allegedly allowing malicious actors access to Stoichev's information on WFS' systems).

[4] The relevant contexts surrounding the alleged purchase (*e.g.*, whether it was in person or online) are entirely within Stoichev's personal knowledge, but is omitted.

absent factual allegations "explaining how this value was lost due to the disclosure" (*e.g.,* "she tried to sell her information and couldn't sell it or was offered less than its value due to the disclosure"). Sims v. Kahrs L. Offices, P.A., 2023 WL 2734317, *6 (D. Kan. Mar. 31, 2023); s*ee also Blood*, 2022 WL 11745549, at *6 ("[e]ven if Plaintiffs' PII and PHI have monetary value . . . they do not allege facts explaining how they lost value because of the breach"). Numerous courts have reached the same conclusion. *See Hutton v. Nat'l Bd. of Examiners in Optometry, Inc*., 892 F.3d 613, 621 (4th Cir. 2018)("mere compromise of personal information, without more, fails to satisfy the injury-in-fact element in the absence of an identity theft"); *In re Capital One Consumer Data Security Breach Litig*., 488 F. Supp. 3d 374, 403–04 (E.D. Va. 2020)(same); *Kimbriel v. ABB, Inc*., 2019 WL 4861168, at *3 (E.D.N.C. Oct. 1, 2019)*; Khan v. Children's Nat'l Health Sys., 188 F. Supp. 524, 534 (D. Md. 2016); In re Google Android Consumer Privacy Litig*., 2013 WL 1283236, at *4 (N.D. Cal. Mar. 26, 2013). Accordingly, Plaintiffs' bare allegations that their PII lost value are insufficient to demonstrate an Article III injury.

### 3.   Lost Time, Annoyance, and Inconvenience

Both Plaintiffs complain of the general lost time, annoyance, and inconvenience of "dealing with the consequences" of the Incident. Compl. ¶¶ 20, 22, 29. The Plaintiffs generally refer to the time spent exploring credit monitoring and insurance options, self-monitoring accounts, and consulting with counsel. Compl. ¶¶ 20, 29. The Plaintiffs do not, even in rough estimates, allege how much time they spent undertaking these tasks. In any event, courts have repeatedly rejected minor inconveniences, prophylactic measures, and self-made harms as bases for Article III standing.

The U.S. Supreme Court made clear in *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1141 (2013), that Plaintiffs "cannot manufacture standing by choosing to make expenditures based

on hypothetical future harm that is not certainly impending." Thus, "incurring costs for mitigating measures to safeguard against future identity theft may not constitute an injury-in-fact when that injury is speculative." *Hutton*, 892 F.3d at 622. *See also Reilly v. Ceridian Corp.,* 664 F.3d 38, 46 (3d Cir. 2011) ("costs incurred to watch for a speculative chain of future events based on hypothetical future criminal acts are no more 'actual' injuries than the alleged 'increased risk of injury'" (citation omitted)).

As explained above, Plaintiffs have not plausibly alleged that their information was exfiltrated during the Incident, and then actually misused in any way. Accordingly, any time lost, annoyance, and inconvenience allegedly experienced by the Plaintiffs is based on an entirely speculative harm. Time and costs incurred worrying about speculative future harms are insufficient to satisfy Article III.

### 4.   Spam Phone Calls

Plaintiff Stoichev alleges that he received an increase in spam phone calls as a result of the Incident. Compl. ¶ 24. Numerous courts have held that an increase in spam phone calls or emails is insufficient to demonstrate an Article III injury.

For example, in *Legg*, 574 F.Supp.3d at 993, the Western District of Oklahoma held that an increase in spam emails is insufficient to demonstrate an Article III injury because it did not plausibly suggest any actual misuse of personal identifying information had occurred. *See e.g. Cooper v. Bonobos*, 2022 WL 170622, a *5 (S.D.N.Y. Jan. 6, 2022) (no injury in fact where plaintiff did not demonstrate that spam texts, calls, and email were "fairly traceable" to defendant's data breach); *Travis v. Assured Imaging LLC*, 2021 WL 1862446, at *9 (D. Ariz. May 10, 2021) ("a dramatic increase in targeted spam phone calls after [a] ransomware attack" did not constitute an injury for purposes of standing); *Cherny v. Emigrant Bank*, 604 F.Supp.2d 605 (S.D.N.Y. 2009)

("[t]he receipt of spam by itself . . . does not constitute a specific injury entitling [plaintiff] to compensable relief"); *Gordon v. Virtumundo, Inc.,* 2007 WL 1459395, at *8 (W.D. Wash. May 15, 2007), *aff'd*, 575 F.3d 1040 (9th Cir. 2009) (plaintiff lacked standing because the harm suffered "must rise beyond the level typically experienced by consumers – *i.e.,* beyond the annoyance of spam").

In sum, an increase of spam calls or emails neither shows misuse of Stoichev's information nor (like mere annoyance) is an independently compensable injury under Article III.

### 5.  Fear and Anxiety

Plaintiffs final injury allegation is that they suffered "fear and anxiety" as a result of the Incident. Compl. ¶¶ 22, 29. Plaintiffs threadbare allegations of "fear and anxiety" are insufficient to meet Article III because they do not state facts demonstrating that their alleged "intangible harm [bears] some relationship to a harm that has traditionally been recognized to confer standing." *Sims*, 22-2112-JWB, 2023 WL 2734317, at *8. Moreover, because Plaintiffs do not allege actual misuse of their information, their alleged and unsubstantiated "fear and anxiety" is based on a speculative future risk of identity theft. As explained in subsection I(B)(3), *supra*, Plaintiffs cannot manufacture an injury based on a "speculative chain of future events based on hypothetical future criminal acts." *Reilly*, 664 F.3d at 46.

In *Sims*, 2023 WL 2734317, at *8, the District Court of Kansas considered whether an allegation of "garden variety emotional distress" was sufficient to satisfy Article III's injury-in-fact requirement, and concluded that "Plaintiff has failed to establish that her alleged harm has a close relationship to a harm historically recognized as providing a basis for a lawsuit." The *Sims* Court relied on the Sixth Circuit's decision in *Garland v. Orlans, PC*, 999 F.3d 432, 440 (6th Cir. 2021), which held that a "general allegation of emotional harm like anxiety or distress falls short

of cognizable injury . . . because liability for emotional harm arises only where [the emotional distress is] extreme." (cleaned up) (quoting Restatement (Second) of Torts § 46 cmt. j). Plaintiffs fail to allege any facts demonstrating that their alleged "fear and anxiety" is tied to a traditionally recognized tort or is "extreme."

The Third Circuit's decision in *Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 150 (3d Cir. 2022) is instructive. In *Clemens* (one of the facts where alleged emotional distress survived a motion to dismiss, the plaintiff not only plead specific facts demonstrating actual misuse (screenshots showing the malicious actors published her exfiltrated information on the Dark Web), but also facts articulating the therapy and other costs she incurred as a result of her emotions distress. *Id.* No such allegations are present here. Plaintiffs neither allege facts demonstrating actual misuse, nor do they articulate facts to substantiate their alleged "fear and anxiety." Accordingly, Plaintiffs again fail to demonstrate a redressable Article III injury.

### C. Plaintiffs have Failed to Allege a Harm that is Fairly Traceable to the WFS' Challenged Conduct

To meet the second element of standing, Plaintiffs must allege facts that show that their concrete injury is "fairly traceable to the challenged conduct of the defendant." *Spokeo,* 578 U.S. at 338. As explained above, Plaintiffs allegations of lost time, anxiety and spam calls do not constitute concrete injury. The only allegation that attempts to allege a non-speculative harm is Stoichev's claim that a criminal *attempted* to make a fraudulent purchase with this Best Buy credit card. Even if this alleged harm could constitute an injury-in-fact (it does not), it is not fairly traceable to the Incident because Stoichev does not allege that: (a) he provided WFS his Best Buy credit card information and that (b) the malicious actors exfiltrated and misused that information.

The Eastern District of Pennsylvania's decision in *Enslin v. The Coca-Cola Company,* 136 F. Supp. 3d 654 (E.D. Pa. 2015) is instructive. In *Enslin*, an employee alleged that his employer

11

required him to provide certain information as a condition of employment, which was stored on an employer-owned laptop. *Id*. at 658. Criminals stole the laptops and in turn stole the employee's identity, withdrew money from employee's bank accounts, made authorized credit card charges, and attempted to open fraudulent credit accounts. *Id*. at 659. The *Enslin* court found that the identify theft, fraudulent withdrawals, and opening authorized credit accounts satisfied Article III because the alleged misuse was fairly traceable to the employer's conduct (allowing theft of the laptops where the employee's information was stored). *Id*. at 665. Relating to the *fraudulent credit card charges*, on the other hand, the *Enslin* court explained:

> Plaintiffs have been found to lack standing in data breach cases where the stolen data cannot be used to create the specific types of harm the plaintiffs have suffered: "[Plaintiff's] current credit card information . . . was not on the stolen laptops . . . Thus, any harm stemming from the fraudulent use of [plaintiff's] current credit card is not 'fairly traceable' to [the defendant]." *In re Horizon Healthcare Servs., Inc. Data Breach Litig*., No. 13-7418, 2015 WL 1472483, at *9 (D.N.J. 2015), *vacated on other grounds*, 846 F.3d 625 (3d Cir. 2017) . . . . [The Employee] does not allege he gave any of [his Employer] credit card information. As such*, there is no causal connection between the information [the employee] gave to [his employer] and the identity thieves' ability to access [the employee's merchant] credit cards* . . . .

*Id.* at 669 (internal citations omitted; emphasis added). Numerous courts have reached the same result. *See Blood*, 2022 WL 11745549, at *8 (plaintiffs "'dark web' allegation lacks a plausible connection to Defendant's actions"); *In re Sci. Applications Int'l Corp.*, 45 F. Supp. 3d at 14, 31 (D.D.C. 2014) (claims of unauthorized charges on bank cards lacked causation because plaintiff did not allege that the bank card information was contained in the stolen information); *Fernandez v. Leidos, Inc*., 127 F. Supp. 3d 1078, 1086 (E.D. Cal. 2015) (no traceability when the plaintiff did not allege that the medical conditions targeted by increased spam mailings were listed in the medical records compromised in the breach).

This Court should follow *Enslin*'s and the other above authority reaching the same result. Like the employee's merchant credit cards in *Enslin*, Plaintiff does not allege facts showing that

he provided his Best Buy credit card to WFS, and that credit card information was taken in the Incident. Stoichev thus fails to allege any facts demonstrating a causal connection between the information allegedly *accessed* during the Incident and the *attempted* fraudulent charge on his Best Buy credit card. Accordingly, Plaintiffs have failed to allege an injury-in-fact that is fairly traceable to the Incident.

For all of the reasons above, this Court should dismiss Plaintiffs' Complaint with prejudice because they have failed to allege facts demonstrating that they have Article III standing.

## II.   ALTERNATIVELY, THIS COURT SHOULD DISMISS PLAINTIFFS' COMPLAINT UNDER RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM

Even if the Court had subject matter jurisdiction over this action, each of Plaintiffs' state law claims fail as a matter of law under Rule 12(b)(6).

*First*, Plaintiffs' negligence claim (Count I) fails because WFS does not owe Plaintiffs a duty of care to protect against the criminal acts of third parties. Plaintiffs also do not plausibly allege a breach of duty or a foreseeable harm (or any harm at all). *See* Subsection (B).

*Second*, Plaintiffs' *per se* negligence claim (Count II) fails because WFS does not owe Plaintiffs a duty of care under HIPAA or the FTC Act, and for all of the same reasons Count I fails. *See* Subsection (C).

*Third*, Plaintiffs' breach of fiduciary duty claim (Count III) fails because Plaintiffs do not allege facts showing a "special relationship" between WFS and Plaintiffs, or a breach of a duty that would be within the scope of a fiduciary relationship between WFS (a tax preparer) and Plaintiffs (a customer). *See* Subsection (D).

*Fourth*, Plaintiffs' breach of implied contract claim (Count V) fails because they do not plausibly allege any conduct or documents that would support the formation of an implied contract

between Plaintiffs and WFS *with defined terms* regarding WFS' cybersecurity practices. *See* Subsection (E).

**Fifth,** Plaintiffs' Oklahoma Consumer Protection Act (Count VI) claim fails because they fail to plead facts showing any deceptive conduct by WFS with particularity as required by Fed. R. Civ. P. 9(b). *See* Subsection (F).

**Sixth**, Plaintiffs' unjust enrichment claim (Count IV) fails for all of the reasons Counts I, II, III, V and VI fail, and it is duplicative of those claims. *See* Subsection (G).

**Seventh**, Plaintiffs' damages claim fail because they have not suffered any legally cognizable damages. *See* Subsection (H).

### A.  Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, the complaint must state "sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, will not suffice." *Id*. at 678. "[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

14

**B. Plaintiffs Fail to Allege Facts Sufficient to Meet any of the Elements of a Negligence Claim as a Matter of Law (Count I)**

"The elements of negligence are: '(1) the existence of a duty on part of defendant to protect plaintiff from injury; (2) a violation of that duty; and (3) injury proximately resulting therefrom.'" *Prince v. B.F. Ascher Co., Inc.*, 90 P.3d 1020, 1027–28 (Okla. App. Div. 3 2004) (quoting *Brigance v. Velvet Dove Restaurant, Inc.,* 1986 OK 41, ¶ 7, 725 P.2d 300, 302). Plaintiffs Complaint fails to meet all three of these elements.

**1. WFS does not owe Plaintiffs a Duty of Care Under Oklahoma Law**

"The existence of a duty is an essential element of a negligence claim; without it the claim must fail." *Henry v. Merck and Co., Inc.,* 877 F.2d 1489, 1492 (10th Cir. 1989) (citing Oklahoma law). "Just because the defendant has created a risk which harmed the plaintiff that does not mean that, in the absence of some duty to the plaintiff, the defendant will be held liable." *Nicholson v. Tacker,* 1973 OK 75, ¶ 11, 512 P.2d 156, 158. Importantly, "[t]he general rule is that, absent special circumstances, no duty is imposed on a party to anticipate and prevent the intentional or criminal acts of a third party. Oklahoma follows that rule." *Henry*, 877 F.2d at 1492 (*citing Joyce v. M & M Gas Co*., 1983 OK 110, ¶ 7)). "Oklahoma recognizes two types of special circumstances that create a duty to anticipate and prevent the illegal acts of a third party: 'where the actor is under a special responsibility toward the one who suffers the harm or where the actor's own affirmative act has created or exposed the other to a recognizable high degree of risk of harm through such misconduct, which a reasonable man would take into account.'" *Prince,* 90 P.3d at 1028 (quoting *Joyce*, ¶ 5, 672 P.2d at 1174).

WFS is not aware of any decision in which a court applying Oklahoma law held that an organization owes a duty to care to its customers in the context of a data breach. This makes sense because in Oklahoma, an organization does not have duty to anticipate and prevent the intentional

15

or criminal acts of a third party – including an unauthorized intrusion into its IT systems. *Henry*, 877 F.2d at 1492. Moreover, neither of the "special circumstances" that would give rise to a special duty of care exist in this case.

First, Plaintiffs do not allege facts demonstrating that WFS' "own *affirmative act* has created or exposed the [Plaintiffs] to a recognizable high degree of risk of harm through such misconduct." *Joyce*, ¶ 5, 672 P.2d at 1174 (emphasis added). Rather, Plaintiffs' claim – like negligence claims in a data breach context – relies entirely on alleged omissions (*i.e.*, failures to "identify[y] the vulnerabilities to its systems and prevent[] the Data Breach from occurring"). Compl. ¶ 74*; see also* ¶ 75. Plaintiffs do not – and cannot – point to any *affirmative act* by WFS that created a "high degree of risk of harm" stemming from a data breach.

Second, Plaintiffs do not allege facts demonstrating that WFS is "under a special responsibility toward[s]" them. *Joyce*, 672 P.2d at 1174. "A special responsibility may arise from a relationship with the victim coupled with a foreseeability of the specific risk to the victim." *Henry v. Merck and Co., Inc.*, 877 F.2d 1489, 1492–93 (10th Cir. 1989). "[T]ypes of relationships which may give rise to one person's special responsibility to protect the other from third persons' intentional or criminal acts include those of a carrier and passenger, innkeeper and guest[,] employer and employee[,]" landlord and tenant, and commercial landlord and tenant's business invitee." *Gaines-Tabb v. ICI Explosives USA, Inc.*, 995 F. Supp. 1304, 1317 (W.D. Okla. 1996), *aff'd*, 160 F.3d 613 (10th Cir. 1998). Plaintiffs do not allege supporting the existence of a special relationship, and a mere business-customer relationship does not create one as a matter of Oklahoma law. Accordingly, WFS did not owe Plaintiffs a duty of care under Oklahoma law.

16

## 2.   Plaintiffs do not Plausibly Allege a Breach of a Duty of Care

Even if Plaintiffs could establish that a duty of care existed, they do not plead any facts plausibly demonstrating a breach of that duty. To plausibly allege a breach of duty Plaintiffs must assert plausible facts showing the ***specific, identified defects*** that led to Incident. *See e.g.*, *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, 2021 WL 5937742, at *15 (D.N.J. Dec. 16, 2021) (allegation that agency was undercapitalized and that security was so deficient that it never discovered; a third-party monitoring the dark web did); *Sackin v. TransPerfect Global, Inc.*, 278 F.Supp.3d 739 (S.D.N.Y. 2017) (allegation that failure to adequately train employees led to an employee falling for a phishing attack); *Wallace v. Health Quest Sys., Inc.*, 2021 WL 1109727 (S.D.N.Y., Mar. 23, 2021) (same); *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 362 F.Supp.3d 1295 (N.D. Ga. 2019) (allegations that defendant has been notified by experts of existing flaws following prior breaches, and incident was result of a specific vulnerability that was subject to a Department of Homeland Security alert).

Plaintiffs allege in conclusory terms that WFS breached their duty by failing implement "appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems." Compl. ¶ 76. This is nothing "more than labels and conclusions," *Bell Atl. Corp.*, 550 U.S. at 555, and it also assumes that because an intrusion occurred that WFS systems must have been deficient. The conclusory allegations are insufficient to demonstrate a breach of duty. As a result, Plaintiffs' Complaint fails to allege a plausible *breach* of a duty of care.

## 3.   Finally, Plaintiffs Fail to Plausibly Allege a Foreseeable Harm

To demonstrate that any alleged harm was foreseeable, Plaintiffs must allege facts showing that WFS was on notice of specific cybersecurity defects in its systems. *See e.g.*, *Sackin v. TransPerfect Global, Inc.*, 278 F.Supp.3d 739 (S.D.N.Y. 2017) (prior emails cautioning against

unsecured emails plausibly showed that risk of phishing attacks were reasonably foreseeable); *Cohen v. Northeast Radiology, P.C*., 2021 WL 293123 (S.D.N.Y. Jan. 28, 2021) (breach was reasonably foreseeable because cybersecurity researchers had notified defendants of the exact flaws that led to that incident); *In re Equifax, Inc*., 362 F. Supp.3d at 1320 (breach reasonably foreseeable because cybersecurity experts had notified defendant of the flaws and because DHS notified the defendant about the precise vulnerability that led to the incident).

Unlike the cases above, Plaintiffs do not allege that WFS was on notice based on either a prior incident, a prior warning of potential threats, or a prior notification of a specific defect in its systems. Rather, Plaintiffs offer only a conclusory allegation Incident was foreseeable solely based on WFS' alleged deficient cybersecurity practices (which, as explained above, are also not articulated). Compl. ¶ 76. Plaintiffs' negligence claim fails, and this Court should dismiss Count I with prejudice.

### C. Neither the FTC Act Nor HIPAA Provide a Duty of Care for a *Per Se* Negligence Claim as a Matter of Law (Count II)

Plaintiffs' *per se* negligence claim (Count II) fails because WFS does not owe Plaintiffs a duty of care under HIPAA or the FTC Act. Numerous courts have repeatedly rejected attempts to use federal statutes to create a duty of care in data breach cases where Congress declined to create a private right of action under those statutes. Moreover, HIPAA does not impose a duty of care because WFS is not regulated by that statute. Finally, Plaintiffs *per se* negligence claim also fails for all of the other reasons Count I fails.

#### 1. WFS does not owe Plaintiffs a Duty of Care under the FTC Act

Courts have repeatedly rejected plaintiffs attempts to rely on the FTC Act to support a *per se* negligence claim in a data breach case. *See In re GE/CBPSData Breach Litigation, 2021 WL 3406374*, at *10 (S.D.N.Y. 2021) ("negligence per se claim is not viable . . . because [the FTC

Act] does not provide a private right of action; instead, the FTCA confers exclusive enforcement authority on the Federal Trade Commission") (applying New York law); *In re Capital One Consumer Data Sec. Breach Litig.*, 488 F.Supp.3d 374, 408 (E.D. Va. 2020) (same; applying Virginia law); *In re Brinker Data Incident Litig.*, 2020 WL 691848, at *9 (M.D. Fla. Jan. 27, 2020) (same; applying Florida law); *In re Sonic Corp. Customer Data Sec. Breach Litig. (Fin. Institutions)*, 2020 WL 3577341, at *6 (N.D. Ohio July 1, 2020) (same; applying Oklahoma law).

The Northern District of Ohio's decision in *In re Sonic Corp. Customer Data Sec. Breach Litig. (Fin. Institutions)*, 2020 WL 3577341 is directly on point. In *In re Sonic*, the district court explained that "Oklahoma courts have held that to support a negligence *per se* claim the underlying statute must 'impose positive objective standards.'" *Id.* at *6 (quoting *Conway v. Lone Star Transportation*, LLC, 2020 WL 609750, at *3 (N.D. Okla. Feb. 7, 2020) (add'l citation omitted)). After review of Section 5 of the FTC Act (the same section relied on by Plaintiffs, Compl. ¶ 81), the *In re Sonic* court observed that

> [b]y its terms, the [FTC Act] only prohibits unfair competition or unfair or deceptive acts. While the FTC and other courts have interpreted Section 5's terms to apply to data security requirements, the statute's actual terms do not lay out positive, objective standards that, if violated, could give the standard for a negligence per se claim under Oklahoma law.

*Id.* at * 6 (citing *Fed. Trade Comm'n. v. Wyndham Worldwide Corp.*, 799 F.3d 236, 247 (3d Cir. 2015); *In re TJX Cos. Retail Sec. Breach Litig.*, 564 F.3d 489, 498 (1st Cir. 2009), *as amended on reh'g in part* (May 5, 2009); *Chartney v. City of Choctaw*, 441 P.3d 173, 177 (Ok. Ct. App. 2019) (holding that regulation that "vaguely require[d] operators to properly operate and maintain facilities" could not sustain negligence *per se* claim for the discharge of pollutants into U.S. waters); *Conway v. Lone Star Transportation*, 2020 WL 609750, *3 (N.D. Okla. Feb. 7, 2020) (holding that driving "in willful or wanton disregard for the safety of persons or property" was not

19

a positive objective standard))(parentheticals in original). Accordingly, the FTC Act does not create a duty of care in Oklahoma as a matter of law.

### 2. WFS does not owe Plaintiffs a Duty of Care under HIPAA

HIPAA does not create a duty of care because WFS is not regulated by that statute. Even if it was, HIPAA, like the FTC Act, does not create a duty of care because it does not "impose positive objective standards." *Conway*, 2020 WL 609750, at *3. *See also Mayfield v. Presbyterian Hosp. Administration*, 772 Fed. Appx. 680, 686 (10th Cir. 2019) ( "HIPAA does not create a private right of action").

First, HIPAA regulates "covered entities" which are "health care providers," "health plans" and "health care clearing houses." 42 C.F.R. § 160.103. Elaboration of the definitions are not necessary – Plaintiffs' own allegations reveal that WFS is a "franchise that provides tax preparation services." Compl. ¶ 2. Plaintiffs do not, and cannot, plausibly allege that tax preparation services are health care services. Accordingly, HIPAA cannot be used to impose a duty of care on WFS because it is not regulated by that Act.

Second, HIPAA, like the FTC Act does not impose a duty of care because it does not "impose positive objective standards." *Conway*, 2020 WL 609750, at *3. While courts applying Oklahoma law have not addressed this exact issue, many courts have concluded negligence *per se* claims cannot be premised on an alleged HIPAA violation. *See e.g., Walters v. Blue Cross and Blue Shield of Texas, Inc*., 3:21-CV-981-L, 2022 WL 902735 (N.D. Tex. Mar. 28, 2022) (Texas); *Fanean v. Rite Aid Corp. of Delaware, Inc.*, 984 A.2d 812, 823 (Del. Super. 2009)(Delaware); *Sheldon v. Kettering Health Network*, 40 N.E.3d 661, 672, 674 (Ohio Ct. App. 2015) (Ohio).

In any event, Plaintiffs do not allege the existence of "positive objective standards" imposed by HIPAA and allegedly violated by WFS. Rather, Plaintiffs make only a sweeping

20

conclusory allegation that WFS did not comply with HIPAA and its Privacy and Security Rules. *See* Compl. ¶¶ 82-85. Nor could Plaintiffs as no such positive objective standards exist. Rather, HIPAA imposes broad, flexible and subjective standards regarding cybersecurity standards for in-scope health care entities and plans. *See* 42 C.F.R. § 160.103 ("covered entities" should "ensure confidentiality" and "protect against reasonably anticipated threats" but such standards are flexible based on numerous factors). Accordingly, WFS is not regulated by HIPAA and HIPAA does not create a duty of care for cybersecurity standards in Oklahoma as a matter of law.

### 3. Plaintiffs Failed to Allege a Breach of Duty and Foreseeability

For the same reasons set forth in Section I(B)(2) and (3), *supra*, Plaintiffs' *per se* negligence claim also fails because Plaintiffs have failed to plausibly allege facts demonstrating (1) any specific deficiencies in WFS' cybersecurity practices that deviated from its alleged obligations under HIPAA or the FTC ACT and (2) that the Incident was foreseeable because WFS was on notice based on prior incidents, warnings of potential threats, or notices of a specific defect in its systems. For all the reasons above, this Court should dismiss Count II with prejudice.

### D. <u>WFS does not owe Plaintiffs a Fiduciary Duty (Count III)</u>

Plaintiffs' breach of fiduciary duty claims fails because Plaintiffs fail to allege facts sufficient to show (1) WFS owed Plaintiffs a fiduciary duty, and (2) protection of data would be within the scope of that fiduciary duty.

First, under Oklahoma law, "[a] claim for breach of fiduciary duty arises in negligence, but raises the duty of care based upon a special relationship." *Horton v. Hamilton*, 345 P.3d 357, 364 (Okla. 2015). "Such a relationship exists when one person acquires influence over another such that the influenced allows the influencer to *substitute his or her will* for the influenced's own." *Id.* (emphasis added). As explained in § I(B)(1), *supra*, Plaintiffs do not allege facts demonstrating

the existence of a "special relationship." Rather, Plaintiffs rely on a conclusory allegation that a fiduciary relationship exists by virtue of them providing their information to WFS and believing that it would be protected at an undefined security standard. Compl. ¶ 91. Such allegations do not show that WFS acquired such influence over Plaintiffs and substituted its will for the Plaintiffs.

Second, even if Plaintiffs' allegations were sufficient to demonstrate the existence of a fiduciary duty, security over Plaintiffs data is not within the scope of that fiduciary duty as a matter of law. The Oklahoma Court of Appeals addressed a similar question in *Graves v. Johnson*, 359 P.3d 1151 (Okla. App. Div. 1 2015). In *Graves*, a client and lawyer had a disagreement about fee for the lawyer's services. *Id*. at 1153. The Court of Appeals held that the client's claim – that that attorney was "enforcing a contract despite having orally agreed not to do so" – did "not implicate Lawyer's fiduciary duties," *id*. at 1157, because "not all lawyer obligations are fiduciary duties," *id*. at 1156 (quoting *Costa v. Allen*, 274 S.W.3d 461 (Mo.2008)). Like *Graves*, even if WFS had an obligation to secure Plaintiffs' information at a certain standard (it does not), that obligation does not implicate WFS' fiduciary duties *as an accountant*.[5] For all the reasons above, this Court should dismiss Count III with prejudice.

### E.  No Implied Contract Exists Between Plaintiffs and WFS (Count V)

Plaintiffs breach of implied contract claim fails because they fail to allege facts demonstrating specific conduct or statements by WFS that would constitute it undertaking a contractual duty "to comply with its statutory and common law duties to protect Plaintiffs' and Class Members' PII and PHI and to timely notify them in the event of a data breach." Compl. ¶ 101. "An implied contract is one, the existence of which is manifested by conduct." *Dixon v. Bhuiyan*, 10 P.3d 888, 891 n.11 (Okla. 2000) (citations and quotations omitted). "When

---

[5] As explained in § II(B)(2), *supra*, Plaintiffs' also fail to allege a plausible breach of a duty.

determining whether an implied contract exists, the Court will consider (a) the parties' acts, conduct and statements as a whole, (b) whether there was a meeting of the minds on the agreement's essential elements, (c) the parties' intent to enter into a contract upon *defined terms*, and (d) whether one of the parties has relied in good faith upon the alleged contract." *Id.* (citing *Queen Anne Candy Co. v. Eagle*, 1939 OK 177, 88 P.2d 630, 631–32) (emphasis added).

Plaintiffs do not allege *any* conduct or statements by WFS that would demonstrate it agreed to undertake any specific duties related to Plaintiffs' information. Plaintiffs also do not allege any facts demonstrating there was meeting of the minds between Plaintiffs and WFS on *defined* terms, such that it created a contract. This Court should dismiss Plaintiffs' implied contract claim because it is devoid of any facts that would demonstrate creation of an implied contract.

F. **Plaintiffs Fail to Allege an "Unlawful Practice" which is a Necessary Element of an Oklahoma Consumer Protection Act Claim (Count VI)**

Plaintiff's Oklahoma Consumer Protection Act ("OCPA") claim fails because they failed to allege any facts (let alone with particularity) demonstrating that WFS engaged in deceptive conduct. "To recover under the [OCPA], a consumer must show: '(1) that the defendant engaged in **an unlawful practice as defined at 15 O.S. (1991), § 753**; (2) that the challenged practice occurred in the course of defendant's business; (3) that the plaintiff, as a consumer, suffered an injury in fact; and (4) that the challenged practice caused the plaintiff's injury.'" *Supermart No. 7 v. N. Star Mut. Ins. Co.*, 2015 WL 737006, at *4 (W.D. Okla. Feb. 20, 2015) (quoting *Patterson v. Beall*, 19 P.3d 839, 846 (Okla. 2000)). "An unlawful practice includes 'a **misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead** a person to the detriment of that person." *Id.* (*quoting* 15 Okla. Stat. §§ 752(13); 753(20)) (emphasis added). Moreover, OCPA claims are subject to Fed. R. Civ. P. 9(b)'s heightened pleading standard to "state with particularity the circumstances constituting fraud or mistake." *See*

23

*T.D. Williamson, Inc. v. Lincoln Elec. Automation, Inc*., 2022 WL 16842907, at \*8 (N.D. Okla. Jan. 21, 2022); *Parrish v. Arvest Bank*, 2016 WL 3906814, at \*2 (W.D. Okla. July 14, 2016). "[P]leaded with particularity means that the plaintiff must specify the source, time, place, manner and content of allegedly fraudulent representations, and the consequences thereof." *In re Commercial Fin. Servs., Inc*., 268 B.R. 579, 602 (N.D. Okla. 2001).

Attempting to plead an "unlawful practice," Plaintiffs state in entirely conclusory terms that WFS "misrepresent[ed that its] data security policy ha[d] characteristics, ingredients, uses, or benefits, which it [did] not have . . . ." Compl. ¶ 112. Plaintiffs, however, do not allege any facts demonstrating what data security policies WFS represented it had to Plaintiffs, when and how WFS allegedly made those representations, or how the alleged lack of data security policies led to the Incident. This Court should dismiss Plaintiffs' OCPA claim because they fail to allege, with particularity, facts demonstrating that WFS engaged in an "unlawful practice."

### G. Plaintiffs' Unjust Enrichment Fails Because it is Duplicative of its Other State Law Claims (Count IV)

This Court should dismiss Plaintiffs' unjust enrichment claim because it is duplicative of their other state law claims. Unjust enrichment is "a condition which results from the failure of a party to make restitution in circumstances where it is inequitable." *Harvell v. Goodyear Tire & Rubber Co*., 164 P.3d 1028, 1035 (Okla. 2006). "As an equitable claim, unjust enrichment generally is unavailable where the plaintiff has an adequate remedy at law." *Id.* at 1035.

The unjust enrichment claim – like every other claim asserted by Plaintiffs – relies on the alleged failure to adequately implement the data privacy and security procedures." Compl. ¶ 98. Courts consistently dismiss unjust enrichment claim when they are duplicative of other claims. *Weaver v. Legend Senior Living*, LLC., 2017 WL 3088416, at \*4 (W.D. Okla. July 20, 2017) (applying Oklahoma law); *see also In re Santa Fe Nat. Tobacco Co. Mktg. & Sales Practices and*

*Products Liab. Litig.*, 288 F. Supp. 3d 1087, 1136 (D.N.M. 2017) ("unjust-enrichment claim fails, because it duplicates the Plaintiffs' statutory claims")(applying New York law); *Crowe v. SRR Partners, LLC*, 2022 WL 4610096, at *5 (D. Utah Sept. 30, 2022)(dismissing unjust enrichment claim is duplicative)(applying Utah law).

### H. **All of Plaintiffs' Claims Fail Because Plaintiffs have not Suffered any Legally Cognizable Damages**

Finally, Plaintiffs state law claims fail because they have not suffered any actual damages. Actual damages are a necessary element to each claim asserted by Plaintiffs. *Richards v. City of Lawton*, 629 P.2d 1260, 1263 (Okla. 1981)(damages an essential element to every common law negligence claim; *F.D.I.C. v. Grant*, 8 F. Supp. 2d 1275, 1299 (N.D. Okla. 1998)("Damages are an essential element of a breach of fiduciary duty claim" (applying Oklahoma law)); *Tibbetts v. Sight "n [sic] Sound Appliance Centers, Inc.*, 77 P.3d 1042, 1051 (Okla. 2003), *as corrected* (Sept. 30, 2003)(actual damages are an essential element to an Oklahoma Consumer Protection Act claim); *Metro. Life Ins. Co. v. Bradshaw*, 450 F. Supp. 3d 1258, 1265 (W.D. Okla. 2020) (unjust enrichment requires retention of a benefit).

For all the of reasons that Plaintiffs lack an injury-in-fact sufficient to support Article III standing, they also lack a cognizable injury as a necessary element of each of the state law claims asserted. *See* § I(B)–(C), *supra*, at pp. 5-12.

### CONCLUSION

For the reasons set forth above, this Court should dismiss Plaintiffs' Complaint with prejudice.

ClarkHill\L4403\458654\271551911.v1-5/8/23

Dated: May 8, 2023

Respectfully submitted,

**FRANDEN | FARRIS | QUILLIN**
**GOODNIGHT | ROBERTS + WARD**

_s/ F. Jason Goodnight_
F. Jason Goodnight, OBA # 19106
Two W. Second St., Suite 900
Tulsa, OK 74103
(918) 583-7129 Telephone
(918) 584-3814 Facsimile
jgoodnight@tulsalawyer.com

-    and -

**CLARK HILL PLC**

_s/ Chirag H. Patel_
Chirag H. Patel (_pro hac vice_)
30 E Randolph St # 3900
Chicago, IL 60601
(312) 985-5900
cpatel@clarkhill.com

Myriah V. Jaworski (_pro hac vice_)
One America Plaza
600 W Broadway #500, San Diego, CA 92101
(619) 557-0404
Email: mjaworski@clarkhill.com

_Attorneys for Defendant,_
_Wing Financial Services, LLC_

ClarkHill\L4403\458654\271551911.v1-5/8/23

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 8, 2023, I electronically filed with the Clerk of the U.S. District Court of the Northern District of Oklahoma, the foregoing document by using the CM/ECF system:

By:   <u>*s/ Chirag H. Patel*</u>
       Chirag H. Patel (*pro hac vice*)
       30 E Randolph St # 3900
       Chicago, IL 60601
       (312) 985-5900
       cpatel@clarkhill.com

       *Attorneys for Defendant,*
       *Wing Financial Services, LLC*