**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| KATHY DEEVERS, individually and on behalf of all others similarly situated,<br><br>and<br><br>VENELIN STOICHEV, individually, and on behalf of all others similarly situated,<br><br>     Consolidated Plaintiffs,<br>v.<br><br>WING FINANCIAL SERVICES, LLC,<br><br>     Defendant. | Case No. 4:22-CV-00550-CVE-MTS |

**PLAINTIFFS' MEMORANDUM OF LAW IN RESPONSE AND
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT**

**FEDERMAN & SHERWOOD**
William B. Federman, OBA # 2853
FEDERMAN & SHERWOOD
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
T: (405) 235-1560
wbf@federmanlaw.com

**COLE & VAN NOTE**
Laura Grace Van Note, Esq.
(C.A. S.B. #310160)
555 12th Street, Suite 1725
Oakland, California 94607
Telephone:  (510) 891-9800
lvn@colevannote.com

**SHUB & JOHNS LLC**
Benjamin F. Johns
Jonathan Shub
Samantha E. Holbrook
Four Tower Bridge,
200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
T: 610.477.8380
bjohns@shublawyers.com
jshub@shublawyers.com
sholbrook@shublawyers.com

*Interim Co-Lead Counsel for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION** ........................................................................................................ 1

**STATEMENT OF FACTS** ......................................................................................... 1

**ARGUMENT** .............................................................................................................. 2

   **I.**   **PLAINTIFFS HAVE ARTICLE III STANDING** ............................................ 2

     **A.**   **Actual Fraud is Not Required to Demonstrate an "Imminent" Risk of Harm** ..... 3

     **B.**   **The Other Types of Harm Alleged in the Complaint are Sufficient to Establish Article III Standing** ........................................................................................... 6

     **C.**   **Wing's Traceability Arguments are Belied by its own Breach Notification and Should not be Resolved on the Pleadings** .................................................... 9

  **II.**  **PLAINTIFFS' COMPLAINT SUFFICIENTLY STATES A CLAIM FOR RELIEF AND SHOULD NOT BE DISMISSED** ........................................................ 10

     **A.**   **Standard of Review** ........................................................................................ 10

     **B.**   **Plaintiffs Adequately Allege Elements to Support a Negligence Claim** ............. 11

        **1.**  *Wing owes Plaintiffs a Duty of Care under Oklahoma Law* .................................. 11

        **2.**  *Plaintiffs Plausibly Adequately Allege a Breach of Duty of Care* ......................... 12

        **3.**  *Plaintiffs Adequately Allege a Foreseeable Harm* ........................................... 13

     **C.**   **The FTC and HIPAA on their Face Prove Duties of Care to Satisfy a claim for Negligence Per Se** ..................................................................................... 13

        **1.**  *The FTC Provides for a Duty Owed by Wing* ........................................................ 14

        **2.**  *HIPAA provides for a Duty Owed by Wing* .......................................................... 15

        **3.**  *Plaintiffs Adequately Allege Breach of Duty and Foreseeability* ........................... 16

     **D.**   **Wing Owed Plaintiffs a Fiduciary Duty of Care** .................................................. 16

     **E.**   **Plaintiffs Adequately Allege Breach of Implied Contract** ................................... 17

     **F.**   **Plaintiffs Adequately Allege Violation of the Oklahoma Consumer Protection Act** … ................................................................................................................ 18

     **G.**   **Plaintiffs Adequately Allege Unjust Enrichment** ............................................... 20

     **H.**   **Plaintiffs Allege Injury and have Suffered Legally Cognizable Claims** .............. 21

**CONCLUSION** .......................................................................................................... 22

i

## **TABLE OF AUTHORITIES**

**Cases**

*Accord C.C. v. Med-Data Inc.,* No. 21-2301-DDC-GEB,
    2022 WL 970862 (D. Kan. Mar. 31, 2022) ............................................................................. 8

*Alexander v. Smith & Nephew, P.L.C.,*
    98 F.Supp.2d 1287 (N.D. Okla. 2000) ................................................................................. 11

*Anderson v. Hannaford Bros. Co.,*
    659 F.3d 151 (5th Cir. 2011) ............................................................................................... 18

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ............................................................................................................. 10

*Baldwin v. Nat'l W. Life Ins. Co.,*
    No. 2:21-CV-04066-WJE, 2021 WL 4206736 (W.D. Mo. Sep. 15, 2021) ............................. 6

*Bass v. Facebook, Inc.,*
    394 F.Supp.3d 1024 (N.D. Cal. 2019) ................................................................................. 21

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................................................................. 10

*Blood v. Labette Cnty. Med. Ctr.,*
    No. 522CV04036HLTKGG, 2022 WL 11745549 (D. Kan. Oct. 20, 2022) ............................ 8

*Castillo v. Seagate Tech., LLC,*
    No. 16-cv-01958, 2016 WL 9280242 (N.D. Cal. Sept. 14, 2016) ....................................... 18

*Clemens v. ExecuPharm Inc.,*
    48 F.4th 146 (3d Cir. 2022) ........................................................................................ 3, 5, 6, 9

*Comer v. Preferred Risk Mut. Ins. Co.,*
    1999 OK 86, 991 P.2d 1006 ................................................................................................. 11

*Dieffenbach v. Barnes & Noble, Inc.,*
    887 F.3d 826 (7th Cir. 2018) ............................................................................................... 21

*Dirickson v. Mings,*
    1996 OK 2, 910 P.2d 1015 ................................................................................................... 11

*Dish Purchasing Corp. v. Suncraft Techs., Inc.,*
    Civil Action No. 22-cv-00127-CMA-KLM, 2023 U.S. Dist. LEXIS 20577 (D. Colo. Feb. 7, 2023) .... 20

*Dixon v. Bhuiyan,*
    2000 OK 56, 10 P.3d 888 ............................................................................................... 17, 18

*F.T.C. v. Wyndham Worldwide Corp.,*
 799 F.3d 236 (3d Cir. 2015)....................................................................................15

*Fraizer v. Bryan Memorial Hospital Authority,*
 1989 OK 73, 775 P.2d 281.....................................................................................13

*Gordon v. Chipotle Mexican Grill, Inc.,*
 344 F. Supp. 3d 1231 (D. Colo. 2018)....................................................................3

*Harvell v. Goodyear Tire & Rubber Co.,*
 2006 OK 24 164 P.3d 1028.....................................................................................20

*Hayes,* 1995 OK 108,
 905 P.2d 777 ...........................................................................................................18

*Henry v. Merck and Co., Inc.,*
 877 F.2d 1489 (10th Cir. 1989)..............................................................................11

*Horton v. Hamilton,*
 2015 OK 20, 345 P.3d 357.................................................................................16, 17

*In re Anthem, Inc. Data Breach Litig.,*
 2016 WL 3029783 (N.D. Cal. May 27, 2016) .........................................................7

*In re Capital One Consumer Data Sec. Breach Litig.,*
 488 F. Supp. 3d 374 (E.D. Va. 2020)................................................................14, 21

*In re Equifax, Inc., Customer Data Security Breach Litig.,*
 362 F. Supp. 3d 1295 (N.D. Ga. 2019) .................................................................14

*In re Experian Data Breach Litig.,*
 No. SACV 15-1592 AG (DFMx), 2016 WL 7973595 (C.D. Ca. Dec. 29, 2016)....................7

*In re Marriott Intl., Inc., Customer Data Sec. Breach Litig.,*
 440 F. Supp. 3d 447 (D. Md. 2020) ..........................................................7, 14, 22

*In re MCG Health Data Security Issue Litig.,*
 No. 2:22-CV-849-RSM-DWC, 2023 WL 3057428 (W.D. Wash. March 27, 2023) ............14

*In re Target,*
 66 F. Supp. 3d 1154 (D. Minn. 2014) ....................................................................21

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.,*
 No. 1:14-md-2583-TWT, 2016 WL 2897520 (N.D. Ga. May 17, 2016) ................15

*In re USAA Data Sec. Litig.,*
 No. 21 CV 5813(VB), 2022 WL 3348527 (S.D.N.Y. Aug. 12, 2022) ..................5, 7

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.,*
 No. 16-MD-02352, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017)........................22

*Jordan v. Western Farmers Elec. Co-op.*,
  2012 OK 94, 290 P.3d 9 .................................................................................................. 13

*Joyce v. M & M Gas Co.*,
  1983 OK 110 672 P.2d 1172) .......................................................................................... 11

*Kostka v. Dickey's Barbecue Rests., Inc.*,
  2022 WL 16821685 (N.D. Tex. Oct. 14, 2022) ............................................................ 5, 7

*Legg v. Leaders Life Ins. Co.*,
  574 F. Supp. 3d 985 (W.D. Okla. 2021) ........................................................................... 8

*Lockhart v. Loosen*,
  1997 OK 103, 943 P.2d 1074 .......................................................................................... 12

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ........................................................................................................... 3

*Ohio Cas. Ins. Co. v. Todd*,
  1991 OK 54, 813 P.2d 508 ............................................................................................... 14

*Pace v. Swerdlow*,
  519 F.3d 1067 (10th Cir. 2008) ....................................................................................... 10

*Patterson v. Beall*,
  2000 OK 92, 19 P.3d 839 ................................................................................................. 19

*Pruchnicki v. Envision Healthcare Corp.*,
  845 F. App'x 613 (9th Cir. 2021) .................................................................................... 21

*Rudolph v. Hudson's Bay Co.*,
  No. 18-cv-8472 (PKC), 2019 WL 2023713 (S.D.N.Y. May 7, 2019) ............................... 7

*Sackin v. TransPerfect Global, Inc.*,
  278 F. Supp. 3d 739 (S.D.N.Y. Oct. 4, 2017) ................................................................. 21

*Salas v. Acuity-CHS, LLC*,
  No. CV 22-317-RGA, 2023 WL 2710180 (D. Del. Mar. 30, 2023) ............................. 3, 5, 6

*Satterfield v. City of Tulsa*,
  2008 WL 111981 (N.D. Okla. 2008) ............................................................................... 10

*Sellers v. Sellers*,
  1967 OK 34, 428 P.2d 230 ............................................................................................... 17

*Shiyang Huang v. Equifax Inc. (In re Equifax Customer Data Sec. Breach Litig.)*,
  999 F.3d 1247, 1257 (11th Cir. 2021) ............................................................................... 4

*Sims v. Kahrs L. Offs., P.A.*, No. 22-2112-JWB, 2023 WL 2734317 (D. Kan. Mar. 31, 2023) ................... 8

iv

*Smallman v. MGM Resorts Intl.*,
No. 2:20-cv-00376-GMN-EJY, 2022 WL 16636958 (D. Nev. Nov. 2, 2022) ........................7

*Southwest Orthopaedic Specialists, P.L.L.C. v. Allison*,
2018 OK CIV APP 69, 439 P.3d 430. ............................................................................16

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016) ...................................................................................................3

*St. Louis–San Francisco Ry. Co. v. Gilbert*,
1939 OK 439, 95 P.2d 123 (1939) ................................................................................11

*Stasi v. Inmediata Health Grp. Corp.*,
501 F.Supp.3d 898 (S.D. Cal. 2020) ............................................................................21

*Supermart v. N. Star Mut. Ins. Co.*,
No. CIV-14-1129-M, 2015, U.S. Dist. LEXIS 20286 (W.D. Okla. Feb. 20, 2015) .............19

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149, 158 (2014) ...............................................................................................4

*Sutton v. Utah State School for the Deaf & Blind*,
173 F.3d 1226 (10th Cir.1999) .....................................................................................10

*Sweesy v. Sun Life Assurance Co.*,
No. 14–2016; 14–2094, 2016 WL 1237880 (10th Cir. 2016) ..........................................13

*T.D. Williamson, Inc. v. Lincoln Electric Automation, Inc.*,
No. 21-CV-153-GKF-JFJ, 2022 WL 1684907 (N.D. Okla. Jan. 12, 2022) ........................20

*Taylor v. AIG Property Casualty Co.*,
No. 17-CV-525-GKF-JFJ, 2018 WL 11447566 (N.D. Okla. 2018) ..................................10

*Taylor v. Hyson*,
1993 OK 93, 856 P.2d 278..............................................................................................11

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021) ...............................................................................................4, 5

*TruGreen Ltd. P'ship v. Okla. Landscape, Inc.*,
526 F.Supp.3d 1080 (N. D. Okla. 2021) ......................................................................10

*Wells v. Johnson & Johnson*,
554 F. Supp. 3d 1207 (W.D. Okla. 2021) .....................................................................20

*Young v. East Tex. Med. Ctr. Reg'l Healthcare Sys., Inc.*,
No. 17–CIV–101–RAW–JFJ, 2017 WL 7731213 (N.D. Okla. Nov. 6, 2017) ....................13

**Statutes**

15 O.S. § 131 ................................................................................................................... 17

15 O.S. § 133 ................................................................................................................... 17

15 O.S. § 751 ................................................................................................................... 18

15 O.S. § 752 .............................................................................................................. 18, 19

15 O.S. § 753 .............................................................................................................. 18, 19

15 U.S.C § 45 ............................................................................................................. 14, 15

Fed. R. Civ. P. 12 ............................................................................................................. 10

Fed. R. Civ. P. 8 ............................................................................................................... 20

Fed. R. Civ. P. 9 ............................................................................................................... 19

**INTRODUCTION**

Wing Financial Services, LLC ("Wing") failed to adequately safeguard sensitive personal information entrusted to it, thereby allowing cybercriminals to obtain names, addresses, birthdates, Social Security numbers, medical data, insurance information, government identification, state identification, driver's license numbers, financial account numbers and access codes, tax identification number, credit card numbers and security codes (collectively, "PII/PHI") from over 200,000 people (the "Data Breach"). *See* Consolidated Amended Class Action Complaint ("CAC") ¶¶ 3, 6. Wing's arguments in its Motion to Dismiss run contrary to established Article III standing and data breach caselaw and misconstrue both the nature of the relationship that Wing has with Plaintiffs and Plaintiffs' detailed allegations of harm.

**STATEMENT OF FACTS**

Wing is an independently owned and operated Jackson Hewitt franchise that provides tax preparation services on behalf of individuals. CAC ¶ 2. Clients are required to provide their sensitive personal information, including non-public financial information, to Wing as a condition of doing business. *Id.* By collecting, maintaining and storing the PII/PHI of clients, Wing assumed legal and equitable duties to keep the highly sensitive information safe from exfiltration; Plaintiffs and Class members entrusted Wing with their PII/PHI under the assumption that Wing would abide by these duties. *Id.* ¶¶ 35-36.

However, on or around August 7, 2022, cybercriminals infiltrated Wing's inadequately protected network servers and accessed highly sensitive PII/PHI that was being insufficiently protected (the "Data Breach"). *Id.* ¶¶ 3; 58. Wing's investigation revealed that the unauthorized access began as early as September 2020. *Id.* ¶ 58. The stolen information included names, addresses, dates of birth, unique biometric information, Social Security numbers, driver's license

numbers or other state identification card numbers, individual tax identification numbers, passport numbers or other government ID, tax identification numbers, financial account numbers with access codes, payment card numbers, health insurance policy numbers, and medical treatment/history. *Id.* ¶ 59. Nearly four months after it discovered the Data Breach, Wing began to inform victims of the Data Breach via letter notification on or around December 1, 2022. *Id.* ¶¶ 55-59.

The CAC details the actual harm each Plaintiff experienced as a result of Wing's conduct, including that Plaintiff Stoichev received notification in December 2022 that someone was attempting to make purchases using his Best Buy Visa card in another state, and receiving multiple phone calls from loan companies asking about loan applications Plaintiff Stoichev never applied for. *Id.* ¶¶ 23-24. Plaintiffs also spent time monitoring their accounts for fraud and identity theft and will be forced to expend additional time to review their credit reports and monitor their financial accounts and medical records for fraud or identity theft in the future—particularly since the compromised information may include Social Security numbers.

## ARGUMENT

## I.      PLAINTIFFS HAVE ARTICLE III STANDING

Plaintiffs allege a variety of harm they experienced as a result of the Data Breach, including expending a significant amount of time dealing with its fallout (CAC ¶¶ 20, 29), diminished value of their personal data (*Id.* ¶ 21) and, in the case of Plaintiff Stoichev, an attempted fraudulent credit card transaction (*Id.* ¶ 23) and marked increase in phone calls from loan companies asking for information about applications that he never submitted (*Id.* ¶ 24). Wing argues none of these injuries are sufficient to establish Plaintiffs' Article III standing as a matter of law, and the allegations in the CAC fail to factually connect the harm to the Data Breach. Both arguments are

unpersuasive. Article III Standing consists of three elements: (1) an injury in fact, (2) [an injury] that is fairly traceable to the challenged conduct of the defendant, and (3) [an injury] that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).

### A.  Actual Fraud is Not Required to Demonstrate an "Imminent" Risk of Harm

Wing correctly notes that the Tenth Circuit has not yet addressed the issue of whether actual fraud on the part of a plaintiff is required to establish Article III standing in a data breach. Def. Mem. at 6.[1] However, other courts in this circuit have found Article III injury based on similar allegations. For example, in *Gordon v. Chipotle Mexican Grill, Inc.*, 344 F. Supp. 3d 1231 (D. Colo. 2018), the court determined the plaintiffs could establish an Article III injury based on a substantial risk of future injury where the nature of the information taken was sufficient to enable identity theft. *Id* at 1243.

Several other Circuit Courts have addressed this issue. In one recent case, which Wing described as being "instructive" (Def. Mem. at 11), the Third Circuit found that "a plaintiff need not wait until he or she has *actually* sustained the feared harm in order to seek judicial redress but can file suit when the risk of harm becomes imminent." *Clemens v. ExecuPharm Inc.,* 48 F.4th 146, 152 (3d Cir. 2022) (emphasis in original). "This is especially important in the data breach context, where the disclosure of the data may cause future harm as opposed to currently felt harm." *Id.*  Allegations of future harm are sufficiently imminent, for Article III purposes, where "the threatened injury is 'certainly impending' or there is a 'substantial risk' that the harm will occur." *Salas v. Acuity-CHS, LLC,* No. CV 22-317-RGA, 2023 WL 2710180, at *4 (D. Del. Mar. 30, 2023)

---

[1] All references to "Def. Mem." shall refer to Defendant's Motion to Dismiss and Memorandum of Law in Support, filed herein as Doc. No. 25.

(*Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)).

The Eleventh Circuit reached a similar conclusion in *Shiyang Huang v. Equifax Inc. (In re Equifax Customer Data Sec. Breach Litig.)*, 999 F.3d 1247, 1257 (11th Cir. 2021), where it rejected the notion that plaintiffs who had not yet experienced fraud or identity theft lacked Article III standing. In finding that those plaintiffs who had not had their identities stolen had nevertheless "easily shown an injury in fact," *Id.* at 1263, the court observed that when a plaintiff faces a sufficient risk of harm—such as identity theft and damages resulting from such theft—"the time, money and effort spent mitigating that risk are also concrete injuries." *Id.* at 1262. Additionally, "[g]iven the colossal amount of sensitive data stolen, including Social Security numbers, names, and dates of birth, and the unequivocal damage that can be done with this type of data, [the Court had] no hesitation in holding that Plaintiffs adequately alleged that they face a 'material' and 'substantial' risk of identity theft that satisfies the concreteness and actual-or-imminent elements." *Id.* Further, the Eleventh Circuit went on to find that "the allegations of some Plaintiffs that they have suffered injuries resulting from <u>actual</u> identity theft support the sufficiency of all Plaintiffs' allegations that they face a <u>risk</u> of identity theft." *Id.* at 1263 (emphasis in original).

The Supreme Court's recent holding in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) underscores Plaintiffs' standing. In *TransUnion*, a car dealer refused to sell the plaintiff a vehicle because a TransUnion-prepared credit report erroneously identified the plaintiff as on a terrorist watchlist. 141 S. Ct. at 2201. The plaintiff sought to represent a class of *all* individuals who had been misidentified on such a credit report, regardless of actual dissemination to a third party. *Id.* at 2202. While the Court found that individuals whose reports were never disseminated were not injured, the Court had "no trouble concluding" that *all* of those "class members whose credit reports were provided to third-party businesses suffered a concrete harm and thus have

standing." *Id.* at 2209, 2214. The Court did not require a showing of additional harm resulting from TransUnion's sharing of inaccurate information with potential creditors to satisfy standing. It was sufficient for Article III standing purposes that the incorrect information was shared with a third party at all. *See Id.*

Here, Plaintiffs' PII/PHI was disseminated to an unauthorized third-party (i.e., the hacker(s)), just as in *TransUnion. See, e.g.*, CAC, ¶ 59 (Wing's notice stated that "certain client records were accessible to unauthorized parties on the internet"). Courts applying *TransUnion* in the data breach context – particularly in cases where, like here, an intentional breach followed by identity theft and fraud is alleged – have found such allegations to be sufficient for Article III standing. *See Kostka v. Dickey's Barbecue Rests., Inc.*, 2022 WL 16821685, at *5 (N.D. Tex. Oct. 14, 2022), *report and recommendation adopted*, 2022 WL 16821665 (N.D. Tex. Nov. 8, 2022); *In re USAA Data Sec. Litig.*, 2022 WL 3348527, at *3 (S.D. N.Y. Aug. 12, 2022) ; *Salas v. Acuity-CHS, LLC*, 2023 WL 2710180, at *6 (D. Del. Mar. 30, 2023) (citing *Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 155-56 (3d Cir. 2022)).

In this case, Plaintiffs allege that the Data Breach was initiated by cybercriminals. CAC ¶¶ 3, 53. These unauthorized third parties accessed Plaintiffs' and Class Members' sensitive data including, but not limited to, dates of birth, driver's license numbers, and Social Security numbers. *Id.* Plaintiff Stoichev is alleged to have experienced identity theft in the form of (a) an attempted Best Buy transaction in another state and (b) the receipt of multiple phone calls from loan companies asking for information about loan applications that he never submitted. *Id.* ¶¶ 23, 24. Plaintiffs additionally allege impending injury resulting from the Data Breach. *Id.* ¶¶ 78, 87d-f, 89. These allegations are sufficient to establish Article III standing based on an imminent risk of harm. *See Clemens*, 48 F.4th at 152-59 (factors courts should use in assessing whether an alleged

5

injury is imminent or hypothetical include (1) whether the breach was intentional, (2) whether data was misused (not necessarily that of the plaintiffs), and (3) whether the type of data compromised could subject a plaintiff to a risk of identity theft).

**B.   The Other Types of Harm Alleged in the Complaint are Sufficient to Establish Article III Standing**

Setting aside that Plaintiff Stoichev alleged experiencing actual fraud (and therefore demonstrates both an actual and imminent risk of harm), Wing contends that the other categories of harm set forth in the CAC – diminution of value of the PII, lost time/inconvenience, spam phone calls, and fear/anxiety – are not compensable injuries under Article III. *See* Def. Mem. at 6-11. As the Third Circuit explained in the "instructive" *Clemens* opinion, however, "in the data breach context, where the asserted theory of injury is a substantial risk of identity theft or fraud, a plaintiff suing for damages can satisfy concreteness as long as he alleges that the exposure to that substantial risk caused additional, currently felt concrete harms." *Clemon*s, 48 F.4th at 155-56. That is precisely what Plaintiffs allege here. And several cases issued after the Supreme Court's *TransUnion* decision have found the types of harm alleged by Plaintiffs to be sufficiently concrete for standing purposes. *See, e.g. Clemens,* 48 F.4th at 158 (finding the plaintiffs' "emotional distress and related therapy costs and the time and money involved in mitigating the fallout of the data breach" to be sufficiently concrete injuries); *Salas v. Acuity-CHS, LLC*, No. CV 22-317-RGA, 2023 WL 2710180, at *6 (D. Del. Mar. 30, 2023) (finding that allegations of "anxiety and distress" due to fear that compromised information will be misused, as well as '[c]urrent and future costs in terms of time, effort and money' spent mitigating the impact of the data breach" were sufficiently concrete under *TransUnion* to confer Article III standing); *Baldwin v. Nat'l W. Life Ins. Co.,* No. 2:21-CV-04066-WJE, 2021 WL 4206736, at *5 (W.D. Mo. Sep. 15, 2021) (finding "that the allegations of spam phone calls and emails can qualify as an injury to support Plaintiffs' claims");

*In re USAA Data Sec. Litig.*, No. 21 CV 5813(VB), 2022 WL 3348527, at *3 (S.D.N.Y. Aug. 12, 2022) (noting, for purposes of standing under *TransUnion*, that "[i]n the data-breach context, the time and money spent to respond to a data breach may satisfy the injury-in-fact requirement") (citing *Rudolph v. Hudson's Bay Co*., No. 18-cv-8472 (PKC), 2019 WL 2023713, at *6–7 (S.D.N.Y. May 7, 2019)). *See also Kostka*, 2022 WL 16821665, at * 5 (standing satisfied under *TransUnion* where the plaintiffs had alleged that their transactions with the defendant "included an implied subsidiary promise that [defendant] would adequately protect their payment information" and that a "concrete harm" resulted because they "did not get the benefit of their bargain with respect to their implied data-security contracts..."); *In re Experian Data Breach Litig.*, No. SACV 15-1592 AG (DFMx), 2016 WL 7973595, at *5 (C.D. Ca. Dec. 29, 2016) ("[A] growing number of federal courts have now recognized Loss of Value of PII as a viable damages theory.") (quoting *In re Anthem, Inc. Data Breach Litig*., 2016 WL 3029783, at *43 (N.D. Cal. May 27, 2016)); *Smallman v. MGM Resorts Intl.*, No. 2:20-cv-00376-GMN-EJY, 2022 WL 16636958 (D. Nev. Nov. 2, 2022) (finding plaintiffs' allegations that a data breach resulted in a diminution in value of their PII/PHI were well-pleaded, as, "the Data Breach devalued Plaintiffs' PII by interfering with their fiscal autonomy" and "[a]ny past and potential future misuse of Plaintiffs' PII impairs their ability to participate in the economic marketplace"); *In re Marriott Intl., Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 462 (D. Md. 2020) ("[T]he value of [PII] is not derived solely . . . by its worth in some imagined market place where the consumer actually seeks to sell it to the highest bidder, but rather in the economic benefit the consumer derives from being able to purchase goods and services remotely and without the need to pay in cash or a check.").

The authorities relied upon by Wing to argue that Plaintiffs lack standing are readily

distinguishable. For example, the plaintiff in *Sims v. Kahrs L. Offs., P.A.,* No. 22-2112-JWB, 2023 WL 2734317 (D. Kan. Mar. 31, 2023) sued a debt collector because, in an underlying lawsuit, the debt collector publicly filed an unredacted document that contained the plaintiff's name, bank and routing number, address and phone number. *Id.* at *1. Unlike in this case, no Social Security numbers were involved in *Sims*. Also, unlike in this case, the *Sims* plaintiff failed to allege that "any individual obtained her PII and is likely to use it to her detriment," that any person actually looked at the exhibit when it was filed in the public record," or "that any person is currently in possession of her account information." *Id.* at *6. Similarly, the plaintiff in *C.C. v. Med-Data Inc.* "never alleges that anyone has misused her data." No. 21-2301-DDC-GEB, 2022 WL 970862, at *1 (D. Kan. Mar. 31, 2022). *See also Legg v. Leaders Life Ins. Co.,* 574 F. Supp. 3d 985, 988 (W.D. Okla. 2021) ("Crucially, Plaintiff does not allege that he or any other class member has been the victim of identity theft or fraud."). And while the District of Kansas in *Blood v. Labette Cnty.* found that the plaintiffs failed to sufficiently establish standing, it also observed that "[t]he Tenth Circuit has not yet addressed th[e] issue" of "whether the risk of future injury based on stolen personal information constitutes 'injury in fact' for standing purposes." *Blood v. Labette Cnty. Med. Ctr.*, No. 522CV04036HLTKGG, 2022 WL 11745549, at *7 (D. Kan. Oct. 20, 2022). *Accord C.C. v. Med-Data Inc.,* No. 21-2301-DDC-GEB, 2022 WL 970862, at *4 (D. Kan. Mar. 31, 2022) ("Unfortunately, our Circuit hasn't sided with either line of cases. It just hasn't had to address the question."); *Legg v. Leaders Life Ins. Co.,* 574 F. Supp. 3d 985, 989 (W.D. Okla. 2021) (same). In sum, these non-binding cases are factually inapposite, persuasive authority at best and, for the reasons discussed above based on precedent from other Circuit Courts, this Court should find that Plaintiffs have standing under the circumstances here.

### C.   Wing's Traceability Arguments are Belied by its own Breach Notification and Should not be Resolved on the Pleadings

Finally, Wing argues that Plaintiff Stoichev's attempted credit card fraud is not traceable to the Data Breach. Def. Mem. at 7, 12-13. Specifically, it contends that Stoichev's attempt to connect this incident to the breach is implausible because he doesn't allege having provided his Best Buy credit card information to Wing, or that Wing even "collects merchant credit card information in preparing tax returns."[2] But these arguments are belied by the public disclosures made by Wing (through the same law firm representing it in this case) about the breach. For example, a December 30, 2022, letter from Wing to the Maine Attorney General concerning the Data Breach makes clear that this type of data was, in fact, included in the breach:

> On November 10, 2022, Wing Financial determined the files exposed included personally identifiable information. Wing Financial provided notice to all individuals whose information was in the system at the time of the unauthorized access. Information stored in the system at the time of the incident may include the following data elements: names, addresses, dates of birth, unique biometric information, Social Security numbers, driver's license numbers or other state identification card numbers, individual tax identification numbers, passport numbers or other government ID, tax identification numbers, ***financial account numbers with access codes, payment card numbers***, health insurance policy numbers, and medical treatment/history.[3]

Under the appropriate pleading standards, Plaintiffs have therefore alleged that it is plausible that the attempted misuse of Stoichev's payment card (to say nothing of the unsolicited calls he received regarding loans) are traceable to the Data Breach. *Clemens,* 48 F.4th at 158 (finding that plaintiff had alleged sufficient facts to demonstrate traceability for standing purposes by alleging that she suffered injuries as "a direct and proximate result of Defendants' breach").

---

[2] Wing also points out that Stoichev does not allege that he had "directly allege" ever having received its tax preparation services. Def. Mem. at 7. But Wing does not dispute the allegation in the CAC that Stoichev received notice that his PII was involved in the Data Breach. CAC ¶ 19.
[3] https://apps.web.maine.gov/online/aeviewer/ME/40/266008e2-e657-41cb-a258-40357b43c24b.shtml (last visited May 17, 2023) (emphasis supplied).

Plaintiffs have adequately alleged standing.

## II.   PLAINTIFFS' COMPLAINT SUFFICIENTLY STATES A CLAIM FOR RELIEF AND SHOULD NOT BE DISMISSED

Wing asserts Plaintiff's seven (7) causes of action should be dismissed for failing to state claims, assert facts, plausibly plead, and/or because claims are duplicative and there are no legal cognizable damages suffered by Plaintiffs. Def. Mem. at 13-14. Wing's assertions are nothing more than mere conclusory statements made in an attempted diversion from the facts.

### A.  Standard of Review

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *TruGreen Ltd. P'ship v. Okla. Landscape, Inc.,* 526 F.Supp.3d 1080, 1084 (N. D. Okla. 2021), quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In considering a 12(b)(6) motion to dismiss, "the court 'must accept all the well-ple[d] allegations of the complaint as true and ... construe them in the light most favorable to the plaintiff.'" *Taylor v. AIG Property Casualty Co*., No. 17-CV-525-GKF-JFJ, 2018 WL 11447566, at * 2 (N.D. Okla. 2018), quoting *Pace v. Swerdlow*, 519 F.3d 1067, 1073 (10th Cir. 2008). A Rule 12(b)(6) motion "should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Satterfield v. City of Tulsa,* 2008 WL 111981, at * 2 (N.D. Okla. 2008), quoting *Sutton v. Utah State School for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir.1999). As outlined in this pleading, Plaintiffs have sufficiently plead injury-in-fact, as to each cause of action, preventing Defendant from showing any absence of doubt as to the facts set forth in the CAC. Therefore, taking all allegations of the Complaint as true, Defendant's Motion to Dismiss should be denied.

**B.  Plaintiffs Adequately Allege Elements to Support a Negligence Claim**

"Negligence is the failure to observe for the protection of the interests of another person." *Dirickson v. Mings*, 1996 OK 2, ¶ 7, 910 P.2d 1015, 1018. The elements of negligence in Oklahoma are as follows: "(1) the existence of a duty owed by Defendant to Plaintiff to use ordinary care; (2) the breach of that duty; and (3) an injury proximately caused by the breach." *Alexander v. Smith & Nephew, P.L.C.*, 98 F.Supp.2d 1287, 1296 (N.D. Okla. 2000) (citing *Comer v. Preferred Risk Mut. Ins. Co.,* 1999 OK 86, ¶ 10, 991 P.2d 1006, 1010). Wing asserts it does not owe a duty to the Plaintiffs to "protect against the criminal acts of third parties" and that Plaintiffs have not plausibly alleged a "breach of duty or a foreseeable harm…" Def. Mem. at 13.

**1.  *Wing owes Plaintiffs a Duty of Care under Oklahoma Law***

In support of Wing's assertions, it cites case law that provides a duty is not imposed on a party to anticipate and prevent the intentional or criminal acts of third parties. Def. Mem. at 15. However, as "[a]n invitor has a duty to exercise reasonable care to prevent injury to a business invitee," *Taylor v. Hyson*, 1993 OK 93, ¶ 16, 856 P.2d 278 (citing *St. Louis–San Francisco Ry. Co. v. Gilbert,*1939 OK 439, 95 P.2d 123 (1939)), Wing likewise had a duty to use reasonable care to prevent injury to Plaintiffs and Class members.

Oklahoma recognizes two special circumstances in which a duty arises to anticipate and prevent acts of third parties:

> (1) where the actor is under a special responsibility toward the one who suffers the harm; and (2) where the actor's own affirmative act has created or exposed the other to a recognizable high degree of risk of harm through such misconduct, which a reasonable man would have taken into account.

*Henry v. Merck and Co., Inc.,* 877 F.2d 1489, 1492 (10th Cir. 1989) (where the plaintiff was injured after a chemical manufacturer's employee stole acid and threw it on the plaintiff) (quoting *Joyce v. M & M Gas Co*., 1983 OK 110, ¶ 5, 672 P.2d 1172, 1174).

11

The court in *Henry* reasoned that the first special circumstance did not apply because the plaintiff was not injured on the defendant's property, and that no prior relationship existed before the injury. *Henry,* 877 F.2d at 1493. The court further reasoned that the second special circumstance did not apply because the employee who stole acid and injured the plaintiff with it was previously a "model employee" and the defendant "had no reason to know of [the employee's] criminal propensities…." *Id.* at 1493-94. These instances are both dissimilar to the present matter, as alleged in the CAC. Here, the injury was caused by infiltration into Wing's network services, which is the property of Wing. CAC ¶ 3. Moreover, Wing, requiring Plaintiffs and Class members to transmit their PII/PHI, and being responsible for its safekeeping, should have known that such sensitive information was subject to criminal activity. CAC ¶¶ 34-36, 71, 73, 83. Wing cannot credibly claim that it was not (1) responsible for the safekeeping of Plaintiffs' and Class members' PII/PHI, or (2) that it did not know or should not have known that there was a risk of infiltration by criminal actors. "[E]very person is under a duty to exercise due care in using that which he/she controls so as not to injure another." *Lockhart v. Loosen*, 1997 OK 103, ¶ 13, 943 P.2d 1074, 1080. The breached duty and resulting harm was foreseeable and should have been known to Wing.

### 2. *Plaintiffs Plausibly Adequately Allege a Breach of Duty of Care*

Wing has not asserted it did not commit a breach, but rather that Plaintiffs fail to plausibly assert facts showing the "specific, identified defects that led to the [Data Breach]." Def. Mem. at 17. This is a conclusory statement with no supporting facts. Wing cites unrelated case law from outside jurisdictions as its sole support for this claim. Def. Mem. at 17. Plaintiffs clearly and specifically assert Wing breached its duty by failing to exercise reasonable care in safeguarding and protecting PII/PHI, and by "failing to adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security." CAC ¶ 75. These assertions by Plaintiffs are specific

and identify the multiple errors of Wing in safeguarding Plaintiffs' and Class members' PII/PHI. "A pleading must not be dismissed for failure to state a legally cognizable claim unless the allegations indicate beyond any doubt that the litigant can prove no set of facts which would entitle him to relief." *Jordan v. Western Farmers Elec. Co-op.*, 2012 OK 94 ¶ 5, 290 P.3d 9, 11, quoting *Fraizer v. Bryan Memorial Hospital Authority*, 1989 OK 73 ¶ 13, 775 P.2d 281, 287. Wing cannot show an absence of doubt as to whether it breached a duty owed to Plaintiffs and Class members. Viewing the assertions of the CAC as true, it would be improper and premature to dismiss this action based on Wing's unsupported lack of plausibility claim.

### 3.  Plaintiffs Adequately Allege a Foreseeable Harm

Wing asserts Plaintiffs fail to plausibly allege fact showing Wing was on notice of the security defects. Def. Mem. at 17. Plaintiffs, on the contrary, make specific allegations as to the foreseeability of harm caused by inadequate security measures. CAC ¶¶ 51,76, 83, 84, 88. Plaintiffs further cited sources supporting the foreseeability of data breaches absent proper security measures. CAC ¶ 81, 82. To determine whether a complaint is facially plausible, the Court must determine if "it contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Young v. East Tex. Med. Ctr. Reg'l Healthcare Sys., Inc.*, No. 17–CIV–101–RAW–JFJ, 2017 WL 7731213, a* 1 (N.D. Okla. Nov. 6, 2017) (citing *Sweesy v. Sun Life Assurance Co.*, No. 14–2016; 14–2094, 2016 WL 1237880, *3 (10th Cir. 2016)). Accepting the allegations in the CAC as true, it is plausible that Wing should have been or was aware of the potential harm caused by failing to have adequate security measures to protect Plaintiffs' and Class members' PII/PHI.

### C.  The FTC and HIPAA on their Face Prove Duties of Care to Satisfy a claim for Negligence Per Se

Wing asserts that the FTC and HIPAA do not provide it with any duties owed to Plaintiffs

and therefore do not satisfy a claim for negligence *per se*. Def. Mem. at 18. Plaintiffs and Class members provided their PHI and PII to Wing in confidence. If Plaintiffs knew that Wing would not protect their sensitive personal and medical information, the Plaintiffs would never have provided their PHI and PII to it. In accepting Plaintiffs' and Class members' PHI and PII, Wing assumed a duty to safeguard it. Negligence *per se* requires (1) the injury to have been caused by the violation, (2) the injury must be of a type intended to be prevented by the ordinance, and (3) the injured party must be in the class intended to be protected by the statute. *Ohio Cas. Ins. Co. v. Todd*, 1991 OK 54, ¶ 9, 813 P.2d 508, 510. Jurisdictions have held "the violation of a statute or the breach of a statutory duty" may be considered by the trier of fact as evidence of negligence... .'" *In re MCG Health Data Security Issue Litig.*, No. 2:22-CV-849-RSM-DWC, 2023 WL 3057428 *4 (W.D. Wash. March 27, 2023).

### 1.   *The FTC Provides for a Duty Owed by Wing*

Wing focuses this argument on case law discussing "positive objective standards." Def. Mem. at p. 19. However, Wing ignores the vast and growing body of case law recognizing properly plead negligence *per se* claims based upon violations of Section 5 of the FTC Act (15 U.S.C § 45) in high-profile data breach cases. *See In re Capital One Consumer Data Sec. Breach Litig.*, No. 1:19md2915 (AJT/JAF), 2020 WL 5629790, at *17 (E.D. Va. Sept. 18, 2020)  (declining to dismiss a negligence per se claim based on Section 5 of the FTC Act); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 482 (D. Md. 2020) (recognizing that several federal district courts have found plaintiffs to have adequately pled claims of state negligence per se based on alleged violations of Section 5 of the FTC act in data breach cases); *In re Equifax, Inc., Customer Data Security Breach Litig.*, 362 F. Supp. 3d 1295, 1327 (N.D. Ga. 2019) ("The failure to maintain reasonable and appropriate data security for consumers' sensitive

personal information can constitute an unfair method of competition in commerce in violation of the [FTC] Act."); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-2583-TWT, 2016 WL 2897520, at *4 (N.D. Ga. May 17, 2016); *F.T.C. v. Wyndham Worldwide Corp.,* 799 F.3d 236, 247 (3d Cir. 2015) (lax cybersecurity leading to a data breach fell within the meaning of "unfair" under the FTC Act).

The FTC prohibits "unfair . . . practices in or affecting commerce," including, as interpreted by the FTC, the unfair act or practice by a business, such as Wing, of failing to employ reasonable measures to protect and secure PII. 15 U.S.C. § 45(a)(1). Based on the foregoing, Wing's claim as to the absence of an FTC claim is futile and without merit. The FTC creates a duty, the injury to Plaintiffs and Class members resulted from Defendant's violation of said duty, the injury incurred was one meant to be prevented by the FTC, and the Plaintiffs and Class members are of the intended class to be protected. All three elements of negligence *per se* are satisfied.

### 2.  *HIPAA provides for a Duty Owed by Wing*

Wing asserts it is not regulated by HIPAA and therefore has no duty of care under HIPAA, that HIPAA does not create a private right of action, that Wing is not a "covered entity" under HIPAA, and that HIPAA "does not impose positive objective standards." Def. Mem. at 20. Wing is mincing words by focusing on the term "covered entity." Wing cites no Oklahoma law which precludes HIPAA from the three-prong negligence *per se* test listed above**.** Wing admits that courts applying Oklahoma Law have not specifically addressed this issue. Def. Mem. at 20. Since Oklahoma courts have not yet ruled on the applicability of HIPAA under a negligence *per se* claim, it would be improper for this claim to be dismissed without evaluation by this Court. Moreover, Plaintiffs have sufficiently plead the three elements of negligence *per se* as set forth in the CAC. *See* CAC ¶ 79-89. Therefore, Wing's plea to dismiss this claim should be denied.

### 3.  Plaintiffs Adequately Allege Breach of Duty and Foreseeability

As discussed in detail above, Plaintiffs have properly alleged duty, breach of duty, and foreseeability. As to prevent this Court from reading duplicative analysis, Plaintiffs briefly reiterate that Wing breached its duty of care to safeguard Plaintiffs' and Class members' PII/PHI and breached its duty under the FTC and HIPAA for the same reasons set forth. Defendant simply failed to "adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security." CAC ¶ 75. Plaintiffs alleged multiple facts supporting the foreseeability of harm caused by inadequate security measures. *See* CAC ¶¶ 51,76, 83, 84, 88. Plaintiffs also specifically cited sources supporting the foreseeability of data breaches absent proper security measures. *See* CAC ¶ 81, 82.

### D.  Wing Owed Plaintiffs a Fiduciary Duty of Care

Wing claims Plaintiffs do not allege facts sufficient to show Wing owed a fiduciary duty to Plaintiffs and that protection of data would be within the scope of a fiduciary duty. Def. Mem. at 21. To recover on a claim of breach of fiduciary duty, a plaintiff must prove "(1) the existence of a fiduciary relationship; (2) a breach of a fiduciary duty; and (3) the breach of a fiduciary duty was the direct cause of damages." *Southwest Orthopaedic Specialists, P.L.L.C. v. Allison*, 2018 OK CIV APP 69, ¶ 20, 439 P.3d 430, 436. "The law regarding a fiduciary relationship is well settled. Fiduciary or confidential relationship has a broad meaning that includes legal, contractual, formal, and informal relations and exists when one person trusts and relies upon another." *Horton v. Hamilton*, 2015 OK 6, ¶ 20, 345 P.3d 357, 364.

Plaintiffs and Class members contracted with Wing for tax preparation services. CAC ¶ 33. Plaintiffs' and Class members trusted and relied on Wing to provide tax services and to ensure the safety of their PII and PHI. CAC ¶ 21, 35, 38, 55, 75. Based on these facts, taken as true, Wing

16

meets the definition in *Horton* as having a fiduciary or confidential relationship with Plaintiffs' and Class members. Moreover, even if there was a valid dispute as to the fiduciary relationship and duties owed as a result of providing tax service and obtaining PII/PHI, the Oklahoma Supreme Court has held that "the establishment of a fiduciary duty and the extent of a duty are fact specific…" *Id.*, citing *Sellers v. Sellers,* 1967 OK 34, ¶ 21, 428 P.2d 230, 236. This is therefore a matter that would need to be presented to the fact finder prior to any dismissal occurring.

### E.  Plaintiffs Adequately Allege Breach of Implied Contract

Under Oklahoma law, a contract may be either express or implied. 15 O.S. § 131. "An implied contract is one, the existence and terms of which are manifested by conduct." 15 O.S. § 133. An implied contract is distinguished from an express contract by the mode of proof. *Dixon v. Bhuiyan*, 2000 OK 56, ¶ 11, 10 P.3d 888, 891.. An implied contract "is deduced from disclosed circumstances as well as the parties' relations and its terms reflect the agreement which in fairness ought to have been made." *Id*. In determining the existence of an implied contract, Oklahoma courts consider "(a) the parties' acts, conduct and statements as a whole, (b) whether there was a meeting of the minds on the agreement's essential elements, (c) the parties' intent to enter into a contract upon defined terms, and (d) whether one of the parties has relied in good faith upon the alleged contract." *Id*. Crucially, "an implied contract encompasses all provisions—discernible from the circumstances under which the agreement was reached—which are indispensable to effectuate the parties' intentions." *Id*.

Wing argues Plaintiffs do not allege any conduct or statements by it that could give rise to a contractual duty to protect Plaintiffs' information. Def. Mem. at 23. But Plaintiffs allege they provided Wing with "highly sensitive personal and financial information." CAC ¶¶ 14, 17, 35. "[I]t is difficult to imagine how, in our day and age of data and identity theft, the mandatory receipt

of... sensitive personal information would not imply the recipient's assent to protect the information sufficiently." *Castillo v. Seagate Tech., LLC,* No. 16-cv-01958, 2016 WL 9280242, at *9 (N.D. Cal. Sept. 14, 2016). By accepting Plaintiffs' information, "Defendant assumed legal and equitable duties and knew or should have known that they were thereafter responsible for protecting Representative Plaintiffs' and Class Members' PII." CAC ¶ 36. As such, Plaintiffs had a reasonable expectation Wing would protect their information and relied in good faith upon that contractual understanding. *Dixon*, 10 P.3d at 891. Accordingly, they adequately allege breach of implied contract.

Moreover, "normally the issue of whether an implied contract exists is factual." *Hayes*, 1995 OK 108, ¶ 12, 905 P.2d 777, 783, citing *Dupree v. United Parcel Serv.*, 956 F.2d 219, 222 (10th Cir. 1992). Because the issue of whether a contract exists is factual, it is a question for the jury to decide. *See Anderson* v. *Hannaford Bros. Co.,* 659 F.3d 151, 159 (5th Cir. 2011) ("[t]he existence of such an implied contract term is determined by the jury…"). It would therefore be inappropriate for the Court to dismiss Plaintiffs' claim for breach of implied contract at the motion to dismiss stage.

### F. Plaintiffs Adequately Allege Violation of the Oklahoma Consumer Protection Act

Conduct is unlawful under the Oklahoma Consumer Protection Act (the "OCPA") (15 O.S. § 751, *et. seq.*) when, *inter alia*, a business engages in a deceptive or unfair trade practice under 15 O.S. § 752 (13-14). 15 O.S. § 753 (20). A deceptive trade practice is "a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person. Such a practice may occur before, during or after a consumer transaction is entered into and may be written or oral." 15 O.S. § 752 (13) An unfair trade practice is "any practice which offends established public policy or if the practice is immoral,

unethical, oppressive, unscrupulous or substantially injurious to consumers.". 15 O.S. § 752 (14).

Plaintiffs properly allege a cause of action under the OCPA where they show "'(1) that the defendant engaged in an unlawful practice as defined at 15 O.S. § 753; (2) that the challenged practice occurred in the course of defendant's business; (3) that the plaintiff, as a consumer, suffered an injury in fact; and (4) that the challenged practice caused the plaintiff's injury.'" *Supermart v. N. Star Mut. Ins. Co.*, No. CIV-14-1129-M, 2015, U.S. Dist. LEXIS 20286, at *10 (W.D. Okla. Feb. 20, 2015) (quoting *Patterson v. Beall*, 2000 OK 92,¶ 30, 19 P.3d 839, 846.)). "Whether alleged conduct constitutes an unfair trade practice under the OCPA is a fact question that the trial court must determine on a case-by-case basis." *Patterson*, 19 P.3d at 847.

Here, Plaintiffs allege Wing collected their information as part of its provision of financial services and assured reasonable security thereover. CAC ¶ 34. Plaintiffs further allege they would not have provided their information to Wing had they known it would not adequately protect their information. CAC ¶ 91. Indeed, Defendant's Wing's conduct was fraudulent and deceptive because its failure to disclose the vulnerabilities in its information network "created a likelihood of confusion and misunderstanding and had the capacity or tendency to deceive and, in fact, did deceive, ordinary consumers, including Oklahoma Plaintiffs." CAC ¶ 113.  As laid out in detail in the CAC, Plaintiffs allege numerous injuries arising from Wing's failure to protect their information. CAC ¶ 87.

Wing attempts to attack this claim by asserting Plaintiffs have not complied with the heightened standard of pleading under Fed. R. Civ. P. 9(b). Def. Mem. at. 23-24. Rule 9(b) requires the pleader to allege "the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *T.D. Williamson, Inc. v. Lincoln Electric Automation, Inc.,* No. 21-CV-153-GKF-JFJ, 2022 WL 1684907, at *7 (N.D. Okla. Jan.

12, 2022) (citation omitted). Here, Plaintiffs satisfy all requirements. At the time Plaintiffs and Class members engaged in Wing's services, Wing falsely represented that it would safeguard Plaintiffs' PII/PHI. CAC ¶¶ 7, 102. Wing failed to do so by failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use. CAC ¶ 8. The false representations made by Wing resulted in damages. *See* CAC ¶¶ 21, 29, 78, 84, 87, 89, 97. Accordingly, Plaintiffs adequately allege violation of the OCPA and this claim should stand.

### G.  Plaintiffs Adequately Allege Unjust Enrichment

"Unjust enrichment is a condition which results from the failure of a party to make restitution in circumstances where it is inequitable; i.e., the party has money in its hands that, in equity and good conscience, it should not be allowed to retain." *Harvell v. Goodyear Tire & Rubber Co.*, 2006 OK 24, ¶ 18, 164 P.3d 1028, 1035.. The elements of unjust enrichment in Oklahoma are "(1) the unjust (2) retention of (3) a benefit received (4) at the expense of another." *Wells v. Johnson & Johnson*, 554 F. Supp. 3d 1207, 1215 (W.D. Okla. 2021). Wing argues this claim should be dismissed as duplicative. Def. Mem. at 24-25. But the Federal Rules of Civil Procedure expressly allow plaintiffs to plead in the alternative. *Dish Purchasing Corp. v. Suncraft Techs., Inc.*, Civil Action No. 22-cv-00127-CMA-KLM, 2023 U.S. Dist. LEXIS 20577, at *19 (D. Colo. Feb. 7, 2023) (citing Fed. R. Civ. P. 8 (d)). Accordingly, to the extent the Court finds Plaintiffs have not set out a claim for breach of implied contract or are otherwise unable to seek legal relief, Plaintiffs are entitled to seek a remedy under the law of unjust enrichment.

Moreover, many courts have concluded that the failure to secure a party's data can give rise to an unjust enrichment claim where a defendant accepts the benefits accompanying a

plaintiff's data and does so at the plaintiff's expense by not implementing adequate safeguards, thereby making it 'inequitable and unconscionable' to permit a defendant to retain the benefit of the data (and any benefits received therefrom), while leaving the plaintiff party to live with the consequences. *In re Capital One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 412 (E.D. Va. 2020); *See, e.g.*, *Sackin v. TransPerfect Global, Inc.*, 278 F. Supp. 3d 739, 751 (S.D.N.Y. Oct. 4, 2017); *see also In re Target*, 66 F. Supp. 3d 1154, 1178 (D. Minn. 2014). Here, Plaintiffs allege a claim for unjust enrichment far beyond conclusory statements. Defendant received the benefit of payment from Plaintiffs and Class members for services which required the retention of PII/PHI. CAC ¶ 96. Because Wing failed to adequately implement data privacy and security to protect the PII/PHI it retained on behalf of Plaintiffs, Plaintiffs and Class members suffered damage. CAC ¶ 97. Accordingly, Plaintiffs have adequately pleaded a claim for unjust enrichment.

### H.  Plaintiffs Allege Injury and have Suffered Legally Cognizable Claims

Lastly, Wing argues each of Plaintiffs claims fail for lack of cognizable injury. Def. Mem. at 25. But as discussed in detail above, Plaintiffs allege numerous injuries from lost time to actual misuse of stolen data. CAC ¶ 22-23, 29. Even setting aside the impending threat of identity theft which Plaintiffs allege Wing has subjected them to, Plaintiffs have alleged other forms of cognizable injury. Even the most "benign" of Plaintiffs' damages, i.e., lost time, establishes a cognizable injury for standing purposes. *Bass v. Facebook, Inc.*, 394 F.Supp.3d 1024, 1035 (N.D. Cal. 2019) (quoting *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 828 (7th Cir. 2018); *Stasi v. Inmediata Health Grp. Corp.*, 501 F.Supp.3d 898, 912 (S.D. Cal. 2020); *Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 614 (9th Cir. 2021). In order to sidestep this clearly established rule, and despite the fact that Wing warned victims to take action (e.g., get credit monitoring, be diligent about the effects of the breach), Wing now pivots and argues that Plaintiffs'

lost time is self-inflicted and cannot create standing. This argument lacks all merit.

Indeed, Wing *encouraged Plaintiffs* to take the same action it now claims was unnecessary. In its data breach notice, Wing informed Plaintiffs and Class members to be watchful and to take steps to mitigate their potential future damages. Wing cannot now create the guise of a "manufactured injury" by pointing to the very time-consuming actions that it encouraged Plaintiffs to partake in. Plaintiffs cannot now be chided or discredited for heeding Wing's advice by spending time monitoring their accounts for fraudulent activity. Plaintiffs have therefore alleged facts sufficient to establish injury-in-fact and Article III standing. *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02352, 2017 WL 3727318, at *14 (N.D. Cal. Aug. 30, 2017) (finding allegations that PII is being sold on the dark web, resulting in lost value of PII, is sufficient to plausibly allege injury.)

This Court should not "ignore what common sense compels it to acknowledge – the value that personal identifying information has in our increasingly digital economy." *In re Marriott*, 440 F.Supp.3d at 462.This argument therefore lacks merit and Defendant's motion should be denied.

## <u>CONCLUSION</u>

For the reasons set forth herein, Plaintiffs have adequately alleged each cause of action contained in the CAC and have adequately established Article III standing, and Defendant's Motion to Dismiss should be denied. In the alternative, should the Court find any cause of action is not sufficiently plead, Plaintiffs respectfully request the Court grant leave to amend.

Dated: June 22, 2023

**FEDERMAN & SHERWOOD**

By:    */s/ William B. Federman*
        William B. Federman, OBA # 2853
        10205 N. Pennsylvania Ave.
        Oklahoma City, OK 73120
        T: (405) 235-1560
        wbf@federmanlaw.com

**SHUB & JOHNS LLC**

*/s/ Benjamin F. Johns*
*B*enjamin F. Johns
Jonathan Shub
Samantha E. Holbrook
Four Tower Bridge,
200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
T: 610.477.8380
bjohns@shublawyers.com
jshub@shublawyers.com
sholbrook@shublawyers.com

**COLE & VAN NOTE**

*/s/ Laura Grace Van Note*
Laura Grace Van Note, Esq.
(C.A. S.B. #310160)
555 12th Street, Suite 1725
Oakland, California 94607
Telephone: (510) 891-9800
lvn@colevannote.com

*Interim Co-Lead Counsel for Plaintiffs*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 22nd day of June 2023, a true and correct copy of the foregoing

pleading has been served upon all counsel of record registered to receive electronic notice of filings

in this case via the Court's ECF notification system.

/s/ *William B. Federman*

William B. Federman
