# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KATHY DEEVERS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WING FINANCIAL SERVICES LLC,<br><br>Defendant.<br><br>VENELIN STOICHEV, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WING FINANCIAL SERVICES, LLC.,<br><br>Defendant. | **Case No. 4:22-CV-00550-CVE-JFJ**<br><br>**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT & MEMORANDUM OF LAW IN SUPPORT** |

**INTRODUCTION**

Defendant Wing Financial Services LLC ("WFS" or "Defendant") moved to dismiss ("Motion" or "Mtn.") the consolidated class action complaint (ECF No. 21) ("Complaint") of Plaintiffs Kathy Deevers ("Deevers") and Venelin Stoichev (collectively "Plaintiffs"), pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

As set forth in WFS' Motion, Plaintiffs must – but fail to – demonstrate that they have Article III standing through *concrete factual allegations* that their information was actually misused (or that actual misuse was *imminent*). Confronted with these factual deficiencies, Plaintiffs' opposition ("Opposition" or "Opp.") argues that some lower standard should apply, or that their vague and conclusory allegations of injury should suffice. However, as established in WFS' Motion, and below, courts (including several in this District) have repeatedly dismissed complaints reliant on similarly vague harm allegations.

Moreover, WFS' Motion explains how Plaintiff Stoichev's claim that an unknown criminal attempted to use his Best Buy credit card was not fairly traceable to the Incident because he does not allege: (1) being a customer of WFS, and (2) providing this Best Buy credit card to WFS (or any reasonable basis that WFS would have that information). (Mtn. at 1, 11-13). Stoichev acknowledges this gap but makes no effort to supply the missing facts to create a causal connection between the Incident and the alleged misuse of this Best Buy credit card. (Opp. at 9-10). For this and other reasons explained below, Plaintiffs have failed to demonstrate Article III standing.

Plaintiffs' claims also fail as a matter of law under Rule 12(b)(6). As to Plaintiffs' negligence claim (Counts I and II), they fail to establish any duty of care exists under Oklahoma law. Plaintiffs' claims also fail for the variety of reasons set forth in WFS' Motion. In sum, as explained below, each claim fails because it relies on rote recitation on the elements of each claim

and boilerplate allegations commonly found cybersecurity class actions, rather than factual allegation sufficient to support of necessary elements of each claim. This Court should dismiss Plaintiffs' Complaint with prejudice.

## ARGUMENT

### I. THIS COURT SHOULD DISMISS PLAINTIFFS' COMPLAINT FOR LACK OF ARTICLE III STANDING

#### A. Plaintiffs Fail to Demonstrate Article III Standing Based on Alleged Risk of Identity Theft

WFS' Motion establishes that Courts in this district have required concrete factual allegations of misuse of their information to establish Article III standing. Mtn. at 6-7; *Legg v. Leaders Life Ins. Co.*, 574 F. Supp. 3d 985, 989 (W.D. Okla. 2021); *Blood v. Labette County Med. Ctr.*, 2022 WL 11745549, at *7 (D. Kan. Oct. 20, 2022); *C.C. v. Med-Data Inc.*, 2022 WL 970862 (D. Kan. Mar. 31, 2022). In response, Plaintiffs make no meaningful effort to discuss *Legg, Blood, and C.C.*. Rather, the only circuit case Plaintiffs cite is *Gordon v. Chipotle Mexican Grill, Inc.,* 344 F. Supp. 3d 1231 (D. Colo. 2018), which pre-dates the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2208 (2021), and lacks any discussion as to why an alleged future risk of harm satisfies Article III.

*Clemens v. ExecuPharm Inc.,* 48 F.4th 146 (3d Cir. 2022), is of no help to Plaintiffs. As an initial matter, *Clemens* deviates from the decisions of numerous Circuits who have held that Article III standing requires actual misuse. *See Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1340 (11th Cir. 2021); *In re SuperValu, Inc.*, 870 F.3d 763, 769 (8th Cir. 2017); *Beck v. McDonald*, 848 F.3d 262, 275 (4th Cir. 2017); *Katz v. Pershing, LLC*, 672 F.3d 64, 80 (1st Cir. 2012). As the

Page **2**

District Court of Kansas observed in *C.C.,* 2022 WL 970862, at *4, "Tenth Circuit . . . would follow th[at] line of cases."[1]

Even if this Court found *Clemens,* 48 F.4th at 156, persuasive, Plaintiffs' Complaint fails to demonstrate Article III standing under that standard. First, *Clemens*, held that an alleged risk of identity theft satisfies Article III ***only if*** the plaintiff makes well-pleaded allegations of "additional, currently felt concrete harms." *Id*. The *Clemens* plaintiff met that burden through well-pleaded allegations that she had incurred therapy costs for emotional distress and out-of-pocket identity theft mitigation costs. *Id*. Second, *Clemens* requires plaintiffs to show that the risk of identity theft is *actually imminent* through factual allegations. In *Clemens*, the plaintiff showed that her information was already posted on the dark web. *Id*. at 157. Plaintiffs fail both requirements.

The Eleventh Circuit's decision in *Shiyang Huang v. Equifax Inc. (In re Equifax Customer Data Sec. Breach Litig.),* 999 F.3d 1247, 1257 (11th Cir. 2021), similarly does not help Plaintiffs. First, just four months prior to *In re Equifax*, the Eleventh Circuit followed prior decisions of the First, Fourth, and Eight Circuits finding that concrete allegations of actual misuse were necessary to confer Article III standing. *See Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1343 (11th Cir. 2021)("vague, conclusory allegations that members of the class have suffered any actual misuse" was insufficient to meet Article III). Second, in *In re Equifax*, 999 F.3d at 1262-63, ninety-six consolidated plaintiffs made concrete allegations showing that a significant portion of them had suffered actual identity theft and expenses (*e.g.,* "specific numerical drops in their credit scores; . . . ability to obtain loans affected; purchased credit monitoring," etc.).

---

[1] For this reason, the Northern District of Texas' decision in *Kostka v. Dickey's Barbecue Restaurants, Inc*., 2022 WL 16821685 (N.D. Tex. Oct. 14, 2022), *report and recommendation adopted*, 2022 WL 16821665 (N.D. Tex. Nov. 8, 2022) is also unhelpful. Moreover, in that case, the plaintiffs plausibly alleged facts showing "actual fraud and unauthorized charges" and a breach of contract. Neither is true here.

Finally, *TransUnion LLC v. Ramirez,* 141 S. Ct. 2190, 2208-09 (2021), is entirely inapposite because that case involved a statutory violation of the Fair Credit Reporting Act, and a harm (disclosure of a false credit report) that bore a "'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts." Again, the *TransUnion* plaintiffs had well-pleaded factual allegations demonstrating both a statutory violation (a false notation that they were on a terror watch list) and that the credit reports with the false notation were disseminated to third-party businesses. *Id*.

Accordingly, Plaintiffs' conclusory allegations of their alleged risk of identity theft is insufficient to satisfy Article III.

### B. Plaintiffs' Other Alleged, Conclusory Harms are Also Insufficient to Satisfy Article III

WFS' Motion independently discusses why each of the other categories of alleged harms – diminution of PII; lost time, annoyance, and inconvenience; spam phone calls; and fear and anxiety – fail to demonstrate an Article III injury. Mtn. at 7-11. In sum, courts have rejected these categories of alleged harms when they: (1) are not connected to a concrete risk of identity threat, and (2) are not well-pleaded through factual allegations. *See id*. Both deficiencies exist here.

Rather than address each category, Plaintiffs discuss the alleged harms collectively, ignore a majority of the cases cited in WFS' Motion, and rely on *Clemens*, and a string cite of out-of-circuit decisions. As explained above, *Clemens*, only exposes the deficiencies in Plaintiffs' Complaint. The *Clemens,* 48 F.4th at 146-7, plaintiff made well-pleaded allegations that she had incurred therapy costs for her emotional distress and out-of-pocket identity theft mitigation costs.

Finally, this Court should reject Plaintiffs futile attempt to distinguish the relevant in-circuit decisions on inconsequential facts. Plaintiffs argue that *Sims v. Kahrs L. Offs., P.A.*, 2023 WL 2734317 (D. Kan. Mar. 31, 2023), is different because it did not involve social security numbers,

Page **4**

but they concede that sensitive bank account information was disclosed. Opp. at 8. In fact, *Sims* is persuasive because the plaintiffs in that case, like the Plaintiffs here, failed to plausibly allege actual misuse of their information. Plaintiffs allege that *Legg* 574 F. Supp. 3d 985; *C.C.*, 2022 WL 970862, and *Blood*, 2022 WL 11745549, are distinguishable because the plaintiffs in those cases failed to allege actual misuse of their information. As explained in § I(A) above, that is exactly the defect in Plaintiffs' Complaint. For the reasons stated in §, I(A), *supra*, and § 1(B)(1) of Plaintiffs' Motion, Plaintiffs' Complaint fails to demonstrate Article III standing because it fails to allege actual or imminent identity theft though plausible factual allegations.

### C. Stoichev has Failed to Show his Alleged Merchant Care Use is Traceable to the Incident

Stoichev has failed to demonstrate that the alleged misuse of his Best Buy card is traceable to the Incident. WFS' Motion establishes that Stoichev neither alleges that: (1) he was a customer to WFS, nor (2) WFS has possession of his Best Buy card number (or had any reason to collect it). Mtn. at 3-4. Plaintiffs' Opposition does not attempt to remedy either of these key deficiencies.[2] Rather, address this issue, Stoichev merely points to WFS' notification letter. Opp. at 9. But the Notice Letter merely states that financial account and payments card numbers were among the categories if information disclosed. *Id*. It does not establish that WFS had Stoichev's Best Buy card information. Accordingly, Stoichev has failed to demonstrate that the alleged misuse of his Best Buy card is traceable to the Incident. With that, as explained in § I(B)(4) of WFS' Motion, a

---

[2] If true, Stoichev could have easily submitted a declaration indicating that he was a customer of WFS and that he provided his Best Buy number to WFS. In reviewing a Rule 12(b)(1) challenge, the Court may "go beyond the complaint's allegations to challenge the facts upon which jurisdiction depends, and may do so by relying on affidavits or other evidence properly before the court." *De Baca v. U.S.*, 399 F. Supp. 3d 1052, 1157 (D.N.M. 2019), *aff'd sub nom. Ohlsen v. U.S.*, 998 F.3d 1143 (10th Cir. 2021)(citations omitted).

conclusory allegation of an increase in spam calls alone is also insufficient to demonstrate Article III standing.

Finally, Deevers' attempt to establish standing through the alleged misuse of Stoichev's Best Buy card also fails. First, as set forth in WFS' Motion, "in a putative class action, the named representative must personally allege that he has standing to sue." *Legg,* 574 F. Supp. 3d at 989 (citations omitted); Mtn. at 5. Second, because the alleged misuse of Stoichev's card is not fairly traceable to the Incident, it cannot help Deevers establish Article III standing. For all the reasons above and in WFS' Motion, Plaintiffs lack Article III standing.

## II. PLAINTIFFS' STATE LAW CLAIMS FAIL AS A MATTER OF LAW

### A. Plaintiffs' Negligence Claim Fails

#### 1. No Duty of Care Exists

As set forth by in WFS' Motion, under Oklahoma law there is no duty to "anticipate and prevent the intentional or criminal acts of a third party," unless "special circumstances" exist. *Henry v. Merck and Co., Inc.,* 877 F.2d 1489, 1492 (10th Cir. 1989) (citing Oklahoma law). Plaintiffs' Opposition fails to point to facts in their Complaint showing such that special circumstances exist.

Plaintiffs, in passing, cite to an "invitor's" duty to exercise reasonable care to a "business invitee." Opp. at 18. But Plaintiffs make no effort to develop this argument as this duty clearly relates to the duty to protect a visitor of a business' premises against physical injury.

Plaintiffs also fail to demonstrate that "special circumstances" exist to warrant imposition of a duty of care. Special circumstances exist only "where the actor is under a special responsibility toward the one who suffers the harm or where the actor's own affirmative act has created or exposed the other to a recognizable high degree of risk of harm through such misconduct, which a

reasonable man would take into account." *Joyce v. M & M Gas Co.*, 1983 OK 110, ¶ 5. As set forth in WFS' Motion, Plaintiffs fail to allege facts showing any affirmative acts by WFS that exposed Plaintiffs to a "high degree of risk of harm." Plaintiffs' attempt to distinguish *Joyce* – an entirely inapposite case involving an employee throwing acid at another employee – but fails to point to any factual allegations in their Complaint of affirmative acts of misconduct by WFS. *See* Opp. at 19. Finally, while existence of a duty of care may be question of fact, Plaintiffs' must still allege facts that, if true, would establish special circumstances to establish a duty of care. Accordingly, Plaintiffs fail to demonstrate that special circumstances exist to impose a duty of care against WFS.

### 2. Plaintiffs do not Plausible Allege a Breach of Duty of Care

As set forth in WFS' motion, Plaintiffs must plead facts showing the ***specific, identified defects*** that led to Incident to show a breach of duty. Mtn. at 16-17. The cases cited in WFS' Motion point to cases in which plaintiffs made specific allegations of security defects. *Id.; see e.g., In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, 2021 WL 5937742, at *15 (D.N.J. Dec. 16, 2021) (allegation that agency was undercapitalized and that security was so deficient that it never discovered intrusion; a third-party monitoring the dark web did). Plaintiffs' boilerplate and conclusory allegations of an alleged failure "to adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security" does not appoint to specific defect. Accordingly, Plaintiffs fail to adequately allege a breach of duty.

### 3. No Foreseeable Harm

WFS' Motion also explains that, like an alleged breach of duty, Plaintiffs must plead specific facts showing that the Incident was foreseeable. Mtn. at 17-18. Here again, Plaintiffs

concede they have no specific allegation and rely on their conclusory allegations. *See* Opp. at 20. Accordingly, Plaintiffs fail to adequately allege a foreseeable breach of duty.

### B. Plaintiffs' Per Se Negligence Claim Fails

#### 1. FTC Act

WFS' Motion establishes that "[c]ourts have repeatedly rejected plaintiffs attempts to rely on the FTC Act to support a *per se* negligence claim in a data breach case." Mtn. at 18 (collecting cases). Plaintiffs argue that other jurisdictions have recognized the FTC Act as a basis for a *per se* duty of care, but fail to analyze whether an Oklahoma court would recognize the FTC Act as a basis for a *per se* duty of care. More importantly, Plaintiffs ignore *In re Sonic Corp. Customer Data Sec. Breach Litig. (Fin. Institutions)*, 2020 WL 3577341, at *6 (N.D. Ohio July 1, 2020) (**applying Oklahoma law**), which persuasively concluded that Oklahoma would not recognize the FTC Act as a basis for a per se duty of care.

#### 2. HIPAA

Plaintiffs do not contest that WFS is not regulated by HIPAA because it is not "covered entity." Plaintiffs calls this "mincing words, " Opp. at 15, but they provide no reasonable basis to hold a party responsible to conforming to statutory standards to which it has no obligation to comply. Accordingly, Plaintiffs fail to demonstrate a basis for demonstrating that Oklahoma would recognize HIPAA as a *per se* duty of care against a party not regulated by that statute.

### C. Plaintiffs' Breach of Fiduciary Duty Claim Fails

WFS' Motion demonstrates that Plaintiffs do not allege facts sufficient to show Wing owed a fiduciary duty to Plaintiffs and that protection of data would be within the scope of a fiduciary duty. Mtn. at 21. In response, Plaintiffs neither: (1) cite any case law demonstrating that tax preparers owe a fiduciary duty, nor (2) point to any factual allegations in their Complaint sufficient

to establish that cybersecurity was within the scope of WFS' alleged duty of care. Accordingly, Plaintiffs fail to plausibly plead a breach of fiduciary duty claim.

### D. Plaintiffs' Breach of Implied Contract Claim Fails

Creation of an implied contract requires (a) specific words or conduct, (b) evidencing a meeting of the minds, (c) to create a contract on *defined terms*. Mtn. at 22 (citing *Dixon v. Bhuiyan*, 10 P.3d 888, 891 n.11 (Okla. 2000)). Plaintiffs' Opposition acknowledges that the forgoing are the essential elements an implied contract claim but fail to point to any factual allegations that would establish any meeting of the minds between Plaintiffs and WFS to secure their information "on defined terms." Rather, they only claim that they provided information to WFS and that they had a "reasonable expectation" that WFS would "protect their information." Opp. at 18. Plaintiffs' unilateral expectation does not constitute a mutual "meeting of the minds" upon ***defined terms***. Plaintiffs' Complaint fails to plausibly allege the existence of an implied contract.

### E. Plaintiffs' Oklahoma Consumer Protection Act Claim Fails

Plaintiffs' Oklahoma Consumer Protection Act ("OCPA") claim fails they failed to plead, with particularity, an unlawful practice as defined at 15 O.S. (1991), § 753. Mtn. at 23. To meet this standard, Plaintiffs must allege particular facts under Fed. R. Civ. P. 9(b) demonstrating "a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead." *Supermart No. 7 v. N. Star Mut. Ins. Co.*, 2015 WL 737006, at *4 (W.D. Okla. Feb. 20, 2015)(quoting *Patterson v. Beall*, 19 P.3d 839, 846 (Okla. 2000)).

Plaintiffs point to the numerous the conclusory allegations in their Complaint, but these allegations fail to meet the Rule 9(b)'s particularity requirement. Plaintiffs first point to their allegations that WFS "fail[ed] to disclose the vulnerabilities in its information network," Opp. at 19, but their Complaint lacks any factual allegations demonstrating that WFS knew specific

vulnerabilities and failed to disclose them to Plaintiffs. Similarly, Plaintiffs allege that WFS "falsely represented that it would safeguard," but again fails point to any color in its Complaint as to who, when, and how, WFS allegedly made such representation of Plaintiffs. Plaintiffs' conclusory allegations fail to demonstrate an "unlawful practice" under Rule 9(b)'s heightened pleading standard.

### F. Plaintiffs' Unjust Enrichment Claim Fails

WFS reiterates that Courts generally dismiss unjust enrichment claims as catch-all claims that are duplicative of other state law claims. Mtn. at 23-24. Moreover, as Plaintiffs concede, an unjust enrichment claim is limited to "money in [WFS] hands that, in equity and good conscience, it should not be allowed to retain." Opp. at 27 (*citing Harvell v. Goodyear Tire & Rubber Co.*, 2006 OK 24, ¶ 18, 164 P.3d 1028, 1035). Thus, any unjust enrichment claim is limited to *money* Plaintiffs paid to WFS can demonstrate should not be retained by WFS based on a factual showing of "equity and good conscience." However, Plaintiffs do not claim that WFS did not provide a fair value of accounting services in exchange for any fee it paid to WFS. Accordingly, this Court should dismiss Plaintiffs' unjust enrichment claim.

### CONCLUSION

For the reasons set forth above, this Court should dismiss Plaintiffs' Complaint with prejudice.

Dated:  July 24, 2023

Respectfully submitted,

**FRANDEN | FARRIS | QUILLIN GOODNIGHT | ROBERTS + WARD**

*s/ F. Jason Goodnight*
F. Jason Goodnight, OBA # 19106
Two W. Second St., Suite 900
Tulsa, OK 74103
(918) 583-7129 Telephone
(918) 584-3814 Facsimile
jgoodnight@tulsalawyer.com

- and -

**CLARK HILL PLC**

*s/ Chirag H. Patel*
Chirag H. Patel (*pro hac vice*)
30 E Randolph St # 3900
Chicago, IL 60601
(312) 985-5900
cpatel@clarkhill.com

Myriah V. Jaworski (*pro hac vice*)
One America Plaza
600 W Broadway #500, San Diego, CA 92101
(619) 557-0404
Email: mjaworski@clarkhill.com

*Attorneys for Defendant,*
*Wing Financial Services, LLC*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on July 24, 2023, I electronically filed with the Clerk of the U.S. District Court of the Northern District of Oklahoma, the foregoing document by using the CM/ECF system:

By: *s/ Chirag H. Patel*
Chirag H. Patel (*pro hac vice*)
30 E Randolph St # 3900
Chicago, IL 60601
(312) 985-5900
cpatel@clarkhill.com

*Attorneys for Defendant,*
*Wing Financial Services, LLC*